

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico y Otros<br><br>Peticionarios<br><br>v.<br><br>Manuel González López y otros<br><br>Recurridos | Certiorari<br><br>2010 TSPR 189<br><br>179 DPR ____ |

Número del Caso: CC - 2008 - 829

Fecha: 27 de agosto de 2010

Tribunal de Apelaciones:

Región Judicial de San Juan

Jueza Ponente: Hon. Dolores Rodríguez de Oronoz

Abogados da la Parte Peticionaria:

Lcdo. Héctor J. Quiñones Inserni
Lcdo. Iván Aponte González
Lcda. Gloria Arlene Hickey Martínez

Abogado de la Parte Recurrida:

Lcdo. Jaime E. Toro Monserrate

Materia: Fraude, Falsificación de Endosos, Incumplimiento de Contrato y Acción Civil

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Corporación Pública para la
Supervisión y Seguro de
Cooperativas de Puerto Rico
y Otros

     Peticionarios

                              CC-2008-829      Certiorari
       Vs.

Manuel González López
y Otros

     Recurridos


Opinión del Tribunal emitida por el Juez Presidente señor HERNÁNDEZ DENTON


San Juan, Puerto Rico, a 27 de agosto de 2010.

La controversia en este caso requiere que interpretemos por primera vez la Sec. 2-118 de la Ley Núm. 208 de 17 de agosto de 1995, según enmendada, conocida como la Ley de Transacciones Comerciales. 19 L.P.R.A. secs. 401 *et seq*. La referida sección establece un término prescriptivo de tres años para las acciones de apropiación indebida de instrumentos negociables. Específicamente, debemos determinar en qué momento comienza a transcurrir dicho término cuando se trate de la apropiación indebida de cheques. Por entender que el Tribunal de Apelaciones actuó correctamente al decidir que, en el caso de los cheques, el

término prescriptivo comienza a transcurrir cuando éstos se negocian, confirmamos la sentencia recurrida.

I.

La Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC) es una entidad pública cuyas funciones y facultades fueron establecidas mediante la Ley Núm. 114 de 17 de agosto de 2001. 7 L.P.R.A. secs. 1334 *et seq.* Sus funciones principales son la fiscalización y supervisión de las cooperativas de ahorro y crédito, así como la formulación de la política pública y reglamentación del movimiento cooperativo. 7 L.P.R.A. sec. 1334.[1] Las cooperativas tienen la obligación de someter anualmente a COSSEC un estado de situación que refleje sus circunstancias financieras, incluyendo el balance de las cuentas de acciones y depósitos de los socios. 7 L.P.R.A. sec. 1334k. Al ejercer sus facultades fiscalizadoras, COSSEC puede exigir a una cooperativa informes financieros adicionales o de cualquier otra índole y podrá realizar auditorías extraordinarias. *Íd.*; 7 L.P.R.A. sec. 1334p.

En dicha ley también se le otorga a COSSEC el poder de colocar a las cooperativas que regula bajo administración en sindicatura e iniciar las acciones que estime necesarias a nombre de éstas. 17 L.P.R.A. sec. 1334b. En el ejercicio de

---

[1]COSSEC es dirigida por una Junta de Directores compuesta por: el Administrador de la Administración de Fomento Cooperativo, el Comisionado de Instituciones Financieras de Puerto Rico, el Secretario de Hacienda, el Inspector de Cooperativas, cuatro representantes de las cooperativas aseguradas y un ciudadano particular en representación del interés público. 7 L.P.R.A. sec. 1334c.

tales facultades, COSSEC colocó a la Cooperativa de Ahorro y Crédito de los Empleados de la Autoridad de Puertos y de la Autoridad Metropolitana de Autobuses (Cooperativa) bajo administración en sindicatura.

El 4 de febrero de 2004, luego de realizar una auditoría de las finanzas de la Cooperativa, COSSEC presentó una demanda contra el Sr. Manuel González López, su hermano el Sr. Lino González López, los miembros de la Junta de Directores de la Cooperativa, los miembros del Comité de Supervisión de la Cooperativa y los auditores externos de la Cooperativa, entre otros. Alegó, en síntesis, que el señor Manuel González López, quien fungió como administrador de la Cooperativa entre 1999 y 2003, en contubernio con su hermano y fraudulentamente, emitió cheques a nombre de socios y personas ficticias que luego endosaban y depositaban en sus cuentas personales. Según COSSEC, la cuantía de los cheques apropiados indebidamente ascendía a $1,897,258.

COSSEC también incluyó como demandado al Banco Popular de Puerto Rico por ser la entidad bancaria en la que el señor González López y su hermano tenían las cuentas personales que supuestamente utilizaron para depositar los cheques apropiados indebidamente. En la demanda se le imputó al Banco Popular no ejercer el cuidado debido al verificar los endosos; obrar de mala fe al no investigar el aumento de actividad transaccional de las cuentas de los co-demandados en cuestión; e incurrir en negligencia crasa al autorizar el depósito de cheques fraudulentos e ilegales, entre otras cosas.

Posteriormente, el Banco Popular presentó una moción para que se dictara sentencia por las alegaciones y adujo que toda causa de acción en su contra relacionada al cambio o depósito de cheques que haya surgido más de tres años antes de que se presentara la demanda estaba prescrita a tenor de la Sec. 2-118 de la Ley de Transacciones Comerciales, 19 L.P.R.A. sec. 518. Señaló que el momento en el que surge la causa de acción por apropiación indebida de un cheque es cuando éste se negocia. Es decir, cuando se paga, se cambia o se deposita. Adujo que así lo han resuelto los estados cuya legislación sobre instrumentos negociables procede del Uniform Commercial Code, como la nuestra.

Por su parte, COSSEC se opuso y alegó que en Puerto Rico rige la teoría cognoscitiva del daño, por lo que las causas de acción en relación con la apropiación indebida de los cheques surgieron cuando descubrió que el señor González López y su hermano se habían apropiado del dinero, y no cuando se negociaron los cheques. Por tal razón, alegó que ninguna de sus causas de acción contra el Banco Popular están prescritas.

Tras varios incidentes procesales, el Tribunal de Primera Instancia declaró con lugar la referida moción y dictó sentencia parcial a favor del Banco Popular. Asimismo, determinó que el momento en el que surgieron las causas de acción fue cuando se cambiaron y se depositaron cada uno de los cheques en las cuentas personales del señor González López y su hermano. Por ende, desestimó todas las reclamaciones relativas a cheques que se hubieran negociado

más de tres años antes de que se presentara la demanda. Desestimó, además, toda reclamación contra el Banco Popular por gastos de síndicos, auditores, gastos legales, costas y honorarios de abogado.

Inconforme con dicha determinación, COSSEC acudió al Tribunal de Apelaciones. Adujo que el foro de instancia se equivocó al estimar que la causa de acción surge cuando el cheque se negocia y no cuando el perjudicado descubre la apropiación, como sería si se hubiese reconocido la aplicación de la teoría cognoscitiva del daño. El Banco Popular se opuso y solicitó al Tribunal de Apelaciones que confirmara la sentencia. Fundamentó su solicitud esencialmente en los mismos argumentos que esgrimió ante el Tribunal de Primera Instancia. Luego de otros trámites, el foro apelativo intermedio confirmó la sentencia apelada por entender que se había resuelto correctamente que las causas de acción respecto a cheques negociados por el Banco Popular más de tres años antes de que se interpusiera la demanda estaban prescritas.

Ante esta determinación adversa, COSSEC acude ante nos mediante recurso de *certiorari* y reitera los argumentos que presentó ante los foros inferiores. Aduce que, ante el silencio que guarda la Ley de Transacciones Comerciales en cuanto al surgimiento de la causa de acción en cuestión, no procede acudir a otras jurisdicciones para llenar el vacío, sino que es de aplicación la teoría cognoscitiva del daño.

Acordamos expedir, y con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II.

Los instrumentos negociables, o títulos cambiarios, como se les designa en la tradición civilista, son documentos en los que se plasma el derecho a cobrar una suma de dinero y a los que el ordenamiento jurídico les confiere una especial habilidad para circular. M.R. Garay Aubán, Derecho Cambiario, Ponce, Ed. Revista de Derecho Puertorriqueño, 1999, pág. 1. Los instrumentos negociables modernos más utilizados son la letra de cambio o giro, el cheque y el pagaré.

Los tratadistas no han podido fijar con precisión el origen de los instrumentos negociables, pero están de acuerdo en que desde tiempos remotos han sido empleados para agilizar el comercio y facilitar el flujo de la riqueza. Así, por ejemplo, dice Basilio Santiago Romero, citando a Bartolomé Guillén E. Igual, que en el derecho asirio-babilónico se utilizaban el *sipartu*; en India el *ound kat goud*; en la antigua Grecia el *singraphum*; en Egipto el *sandch;* y en el Imperio Romano el *permutatio* y la *receptum argentarii*. B. Santiago Romero, Instrumentos Negociables: Ley Uniforme de Instrumentos Negociables de Puerto Rico y Comentarios al Código Uniforme de Comercio de los Estados Unidos, Palencia de Castilla, Industrias Gráficas Diario-Día, 1966, págs. 9-10. La primera mención de la letra de cambio, instrumento negociable por excelencia, en lo que hoy conocemos como el Reino de España, se encuentra en un edicto publicado en 1394 por magistrados barceloneses. *Íd*.

En lo que respecta a Puerto Rico, nuestra primera legislación sobre estos medios de intercambio comercial

provenía del Código de Comercio español de 1889. Posteriormente, dicho código fue enmendado por la Ley Uniforme de Instrumentos Negociables de Puerto Rico, Ley Núm. 17 de 22 de abril de 1930. Ésta estaba basada en la Ley Uniforme de Instrumentos Negociables estadounidense de 1896 y desarrollada por el National Conference of Commissioners on Uniform State Laws. Para 1924 todos los estados habían adoptado la Ley Uniforme de Instrumentos Negociables con ligeras variaciones. Garay Aubán, op. cit., pág. 19. Esta legislación modelo estaba basada, a su vez, en el Bill of Exchange Act inglés de 1882, que en su momento codificó las prácticas mercantiles que venían observándose en Inglaterra desde la Edad Media. *Íd.*

En 1952, el National Conference of Commissioners on Uniform State Laws, en conjunción con el American Law Institute, publicaron el Uniform Commercial Code (UCC). A través del resto del Siglo XX los distintos estados integraron dicho código modelo dentro de sus propios ordenamientos internos. En Puerto Rico, el proceso de integración del UCC comenzó con la aprobación de la Ley Núm. 208 de 17 de agosto de 1995, antes conocida como la Ley de Instrumentos Negociables y Transacciones Bancarias. Posteriormente, mediante la Ley Núm. 241 de 19 de septiembre de 1996, se enmendó la Ley Núm. 208, *supra*, para que fuera conocida como la Ley de Transacciones Comerciales (LTC), nombre que lleva actualmente.[2] A través de los años este

---

[2] La Ley Núm. 208, *supra*, está dividida en cinco capítulos e incorporó a nuestra legislación normas basadas

cuerpo normativo se ha enmendado en múltiples ocasiones, más recientemente, mediante la Ley Núm. 96 de 10 de septiembre de 2009, la cual introdujo ciertos cambios relativos al perfeccionamiento de gravámenes mobiliarios. 19 L.P.R.A. secs. 2104, 2108.

El propósito principal de incorporar el UCC a través de la LTC fue modernizar el derecho cambiario puertorriqueño y ponerlo a la par con las legislaciones vigentes en las demás jurisdicciones estadounidenses, según se indicó en la Exposición de Motivos de la Ley Núm. 208, *supra*. Allí se hace referencia a la necesidad de que la regulación cambiaria sea capaz de atender los asuntos que surgen en el mercado

---

en los Artículos 1, 3, 4, y 4A del UCC. El primero de sus capítulos provee las reglas de interpretación y aplicación y está basado en el Art. 1 del UCC. Secs. 1-102 a 1-208 de la LTC, 19 L.P.R.A. secs. 401-458. El segundo capítulo trata sobre el tráfico de los instrumentos negociables y corresponde al Art. 3 del UCC. En específico, regula la negociación, cesión, pago y ejecución de los instrumentos negociables, así como la responsabilidad de las partes, la desatención y el relevo. Secs. 2-102 a 2-605 de la LTC, 19 L.P.R.A. secs. 502-755. El tercer capítulo, el cual está basado en el Art. 4 del UCC, establece las normas que rigen los depósitos y cobros bancarios. Secs. 3-101 a 3-504, 19 L.P.R.A. secs. 801-1004. El cuarto capítulo, basado en el Art. 4A del UCC, versa sobre las transferencias de fondos. Secs. 4-101 a 4-507, 19 L.P.R.A. secs. 1021-1167. Por último, se dispuso la derogación de los Artículos 353 a 548 del Código de Comercio y la fecha de vigencia de la LTC.

Por medio de la Ley Núm. 241 de 19 de septiembre de 1996 se incorporaron a nuestro ordenamiento los Arts. 5, 7, 8, y 9 del UCC mediante la creación de capítulos de la LTC con idéntica numeración. Así, el Capítulo 5 ahora regula las cartas de crédito. Secs. 5-101 a 5-117, 19 L.P.R.A. secs. 1221-1236. El Capítulo 7 establece las normas relativas a los resguardos de almacén. Secs. 7-101 a 7-602, 19 L.P.R.A. secs. 1401-1653. En el Capítulo 8 se regulan los valores de inversión. Secs. 8-101 a 8-511, 19 L.P.R.A. secs. 1701-1911. Por último, el Capítulo 9 establece las normas relativas a las transacciones garantizadas por propiedad mueble. Secs. 9-101 a 9-507, 19 L.P.R.A. secs. 2001-2207.

moderno. 1995 (Parte 1) Leyes de Puerto Rico 1013. Uno de los aspectos más importantes que se intenta regular a través del UCC y de la LTC es la fijación de responsabilidades, de forma tal que los obstáculos que con frecuencia surgen en el flujo comercial se puedan remover rápidamente y, en cambio, la riqueza fluya libremente. Así, por ejemplo, se expresa que, "[e]n el ambiente electrónico de fin del Siglo XX, la expedición, presentación, confirmación, cobro, pago y devolución de los millones de efectos en circulación exigen términos específicos para la fijación de responsabilidades conexas con cada paso de su manejo y negociación". *Íd*.

Con lo anterior como norte, la Sec. 1-102 de la LTC establece, entre otras cosas, que sus propósitos fundamentales son: "(a) simplificar, clarificar y modernizar el derecho que rige las transacciones comerciales; (b) permitir la continua expansión de prácticas comerciales por medio de las costumbres, los usos y los acuerdos entre las partes; y, (c) uniformar el derecho entre las diversas jurisdicciones". 19 L.P.R.A. sec. 401. Por su parte, la Sec. 1-103 dispone que "[a] menos que sean desplazados por disposiciones particulares de esta Ley, los principios generales de derecho de nuestra jurisdicción aplicarán de modo supletorio".[3] 19 L.P.R.A. sec. 402.

---

[3] Este es el texto vigente actualmente, según se dispuso en la Ley Núm. 176 de 31 de agosto de 1996. El texto original de la Ley Núm. 208 disponía que, "[a] menos que sean desplazados por disposiciones particulares de esta Ley, todo lo relativo a los requisitos, las modificaciones, excepciones, interpretación y extinción y a la capacidad de los contratantes se regirá por los principios generales del

La correcta resolución de la controversia ante nos requerirá que determinemos cuál de estas dos disposiciones de la LTC aplica: la Sec. 1-102, *supra*, o la Sec. 1-103, *supra*. Es decir, debemos decidir si acudimos a otras jurisdicciones en aras de uniformar el derecho o si aplicamos de modo supletorio los principios generales del derecho en nuestra jurisdicción –en particular, la teoría cognoscitiva del daño– para determinar cuándo comienza a transcurrir el término prescriptivo de tres años aplicable a la causas de acción por apropiación indebida de instrumentos negociables.

Con ello en mente, y antes de entrar de lleno a resolver el asunto ante nos, pasemos a analizar los preceptos específicos de la LTC pertinentes a la controversia que nos ocupa.

III.

La Sec. 2-104 de la LTC establece los elementos mínimos que debe contener un documento para que sea considerado un instrumento negociable. Allí se establece que un instrumento negociable es:

> [u]na promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden si el mismo:
>
> > (1) Es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;
>
> > (2) es pagadero a la presentación o en una fecha específica, y

---

Derecho en nuestra jurisdicción." 1995 (Parte 1) Leyes de Puerto Rico 1016.

(3) no especifica otro compromiso o instrucción por parte de la persona que ordena o promete el pago que no sea el pago del dinero…. 19 L.P.R.A. sec. 504(a).[4]

La Sec. 2-104 también dispone que "[u]n instrumento es un 'pagaré' si es una promesa y es un 'giro' si es una orden". 19 L.P.R.A. sec 504(e).[5] Además, dicha sección define el cheque como "un 'giro', siempre que no sea un giro documentario, pagadero a la presentación y librado contra un banco, o un cheque del gerente o un cheque de pagador-receptor. Un instrumento puede ser un cheque aunque en su faz sea descrito como otro término, tal como 'giro postal'." 19 L.P.R.A. sec. 504(f). El Profesor Miguel R. Garay Aubán comenta sobre el cheque que:

> [E]s el más común de todos los instrumentos negociables… La LTC frecuentemente da un trato especial a los cheques respecto a los demás instrumentos negociables. La Sección 2-104(f) define al cheque como un giro pagadero a la presentación y librado contra un banco.
>
> El cheque cumple una función económica importantísima como medio de pago de deudas de dinero, aunque está siendo desplazado progresivamente por las tarjetas de crédito y los medios electrónicos de pago. Desde el punto de vista práctico, evita el pago en moneda de curso

---

[4]La propia Sec. 2-104 establece tres excepciones a la norma de que un instrumento negociable no debe contener promesas adicionales a la del pago de una suma de dinero. Éstas son: un compromiso de mantener un colateral para garantizar el pago del dinero; un poder para admitir sentencia o disponer del colateral; y/o una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección al deudor. 19 L.P.R.A. sec. 504.

[5]El texto original de la Sec. 2-104 disponía que un cheque era "una letra de cambio". 1995 (Parte 1) Leyes de Puerto Rico 1033. Mediante la Ley Núm. 241 de 19 de septiembre de 1996 se enmendó la LTC para, entre otras cosas, sustituir las referencias a la "letra de cambio" a través de la LTC por el término "giro".

legal. Una vez cobrado por el acreedor, provee a quien pagó de un instrumento cancelado que le sirve como prueba de pago. Garay Aubán, op. cit., pág. 100-101.

Por su parte, la Sec. 2-420 de la LTC establece una causa de acción por apropiación indebida de instrumentos negociables, incluyendo, por supuesto, el cheque. 19 L.P.R.A. sec. 670. Dicha sección establece en el inciso (a) que, "[u]n instrumento será apropiado indebidamente si el mismo se toma mediante cesión, que no constituye negociación, de una persona que no tiene derecho a exigir el cumplimiento del instrumento, **o si un banco hace u obtiene el pago del instrumento para una persona que no tenía derecho a exigir el cumplimiento o a recibir su pago**". (Énfasis suplido.) *Íd.* Es decir, la LTC dispone que comete apropiación indebida no sólo aquel que tome un instrumento sin derecho a él, sino también el banco que haga u obtenga el pago del instrumento. *Íd.*

Es preciso señalar que dicha sección también establece que en una acción por apropiación indebida de un instrumento negociable, "**se presumirá que la medida de responsabilidad es la cuantía pagadera en el instrumento, pero lo recobrado no nunca [sic] podrá exceder el monto del derecho que el reclamante tenga bajo el instrumento**". (Énfasis suplido.) *Íd.* Mediante esta disposición se fija un límite a la cuantía que una persona podrá recobrar de otra o de un banco como consecuencia de la apropiación indebida de un instrumento negociable. Dicho límite corresponde al monto de la promesa u orden de pago plasmada en el instrumento negociable.

En lo relativo a la prescripción de esta acción, la Sec. 2-118 de la LTC dispone que "[a] menos que esté regida por otra ley referente a reclamación por indemnización o contribución, una acción: (i) por apropiación indebida de un instrumento… **deberá ser comenzada dentro de los tres (3) años siguientes a la fecha en que surja la causa de acción".** (Énfasis suplido.) 19 L.P.R.A. sec. 518. Así, pues, la citada sección establece claramente que a una causa de acción al amparo de la Sec. 2-420 de la LTC*, supra*, le aplica un término de prescripción extintiva de tres años.

No obstante, a pesar de que el legislador instituyó un término de tres años para el ejercicio de una causa de acción por apropiación indebida de un instrumento negociable, ni de la Sec. 2-118, *supra*, ni de la Sec. 2-420, *supra*, en la que se crea la causa de acción, se desprende cuándo surge ésta.

IV.

El caso de autos requiere que determinemos desde qué momento se puede ejercitar una causa de acción por apropiación indebida de un instrumento negociable para fijar cuándo comienza a transcurrir el término prescriptivo. La correcta resolución de la controversia ante nos requerirá que determinemos si debemos aplicar la Sec. 1-102, *supra*, o la Sec. 1-103, *supra*. Es decir, debemos decidir si acudimos a otras jurisdicciones en aras de uniformar el derecho o si aplicamos de modo supletorio los principios generales del derecho en nuestra jurisdicción –en particular, la teoría cognoscitiva del daño– para determinar cuándo comienza a transcurrir el término prescriptivo en cuestión.

A.

Como es sabido, la figura de la prescripción extintiva es de índole sustantiva y se rige por los principios que informan el Código Civil. Santos de García v. Banco Popular, 172 D.P.R. 759 (2007). Hemos expresado que ésta "es un instituto propio del derecho civil inextricablemente unido al derecho que se intenta reivindicar". Campos v. Cía. Fom. Ind., 153 D.P.R. 137, 143 (2001). Ésta aplica como cuestión de derecho con el paso del tiempo, a menos que se interrumpa su curso mediante los actos que el Código Civil y las leyes reconozcan como aquellos que tienen dicho efecto. Santos de García v. Banco Popular, supra. Debido a que opera de forma objetiva, no se puede dejar sin efecto ni oponerse alguien a ella demostrando voluntad en contrario. Íd. El propósito de la prescripción extintiva es castigar la inercia y estimular el ejercicio rápido de las acciones. Campos v. Cía. Fom. Ind., supra. Los términos prescriptivos "fomentan la estabilidad jurídica de la relaciones y la seguridad en el tráfico jurídico". Íd., pág. 144 citando a Culebra Enterprises Corp. V. E.L.A., 127 D.P.R. 943 (1991).

Como parte de la doctrina sobre la prescripción extintiva hemos reconocido la teoría cognoscitiva del daño. Dicha teoría puede considerarse como una excepción a la norma de que un término prescriptivo comienza a transcurrir cuando **objetivamente ocurre el daño**, pues desde ese momento se podría ejercer una causa de acción. La referida teoría establece que una causa de acción en particular surge cuando el perjudicado descubrió o pudo descubrir el daño y quién lo

causó, y conoció los elementos necesarios para poder ejercitar efectivamente su causa de acción. Santiago v. Ríos Alonso, 156 D.P.R. 181, 189 (2002). Por esto, el término para ejercer una acción no comienza a transcurrir cuando se sufre el daño, sino cuando se conocen los elementos necesarios para ejercitar la acción. Padín v. Cía. Fom. Ind., 150 D.P.R. 403, 411 (2000).

Como expresamos en Vega v. J. Pérez & Cía., Inc., 135 D.P.R. 746 (1994), por consideraciones de justicia se estima que el término comienza a transcurrir, no desde que se sufre, sino desde que **subjetivamente se conoce el daño**. En lo que respecta a acciones en daños y perjuicios hemos seguido la corriente civilista liberal de reconocer un elemento subjetivo a la hora de determinar cuándo surge una causa de acción. No obstante, siempre hemos recalcado que si el desconocimiento se debe a falta de diligencia, entonces no son aplicables estas consideraciones sobre la prescripción. Padín v. Cía. Fom. Ind., *supra*, citando a Vega v. J. Pérez & Cía., Inc., *supra*.

### B.

Teniendo en cuenta la magnitud del volumen de transacciones comerciales que se llevan a cabo diariamente mediante instrumentos negociables, no es sorprendente que otras cortes, tanto estatales como federales, se hayan enfrentado previamente a controversias similares. Es decir, a litigios que se traban porque, al igual que en Puerto Rico, los estados han seguido al UCC y han establecido un término prescriptivo de tres años para el ejercicio de la acción por

apropiación indebida de instrumentos negociables sin fijar cuándo dicho término comienza a transcurrir. En la mayoría de dichos casos, ha estado en controversia si se debe entender que el término prescriptivo comienza a transcurrir tan pronto el cheque se negocia o si se debe aplicar la teoría cognoscitiva del daño (conocida en inglés como el *discovery rule*).

La inmensa mayoría de las cortes federales y estatales que se han enfrentado al asunto han descartado la aplicación del *discovery rule*. Véanse, a modo de ejemplo, <u>Travelers Cas. & Sur. Co. of Am., Inc. v. Northwestern Mut. Life Ins. Co.</u>, 480 F.3d 499 (7mo Cir. 2007); <u>Rodrigue v. Olin Employees Credit Union</u>, 406 F.3d 434 (7mo Cir. 2005); <u>John Hancock Fin. Servs. v. Old Kent Bank</u>, 346 F.3d 727 (6to Cir. 2003); <u>Menichini v. Grant</u>, 995 F.2d 1224 (3er Cir. 1993); <u>Kuwait Airways Corp. v. American Sec. Bank</u>, 890 F.2d (D.C. Cir. 1989); <u>Metz v. Unizan Bank</u>, 416 F.Supp.2d 568 (N.D. Ohio 2006); <u>New Jersey Lawyers' Fund for Client Protection v. Pace</u>, 186 N.J. 123 (N.J. 2006); <u>Copier Word Processing Supply, Inc. v. WesBanco Bank</u>, 640 S.E.2d 102 (W. Va. 2006); <u>Yarbro, LTD v. Missoula Fed. Credit Union</u>, 50 P.3d 158 (Mont. 2002); <u>Pero´s Steak and Spaghetti House v. Lee</u>, 90 S.W.3d 614 (Tenn. 2002); <u>Husker News Co. v. Mahaska State Bank</u>, 460 N.W. 2d 476. (Iowa 1990); <u>Kidney Cancer Association v. North Shore Community Bank</u>, 373 Ill. App. 3d 396 (Ill. 2007).[6]

---

[6] Un limitado número de cortes, en su mayoría foros apelativos estatales, han validado la aplicación del *discovery rule*. Véanse, <u>DeHart v. First Fidelity Bank, N.A./South Jersey</u>, 67 B.R. 740 (D.N.J. 1986); <u>Gallagher v.</u>

En <u>Rodrigue v. Olin Employees Credit Union</u>, *supra*, un caso resuelto por la Corte de Apelaciones Federal para el Séptimo Circuito, una empleada se apropió indebidamente de los cheques que las aseguradoras le enviaban a la doctora para quien trabajaba como pago por servicios prestados. Durante el transcurso de nueve años la empleada falsificó los endosos de 269 cheques y los depositó a su cuenta bancaria, apropiándose así de $334,864. La doctora reclamó a la empleada y al banco de esta última a tenor de la disposición del Código de Comercio de Illinois que regula la apropiación indebida de instrumentos negociables. Dicha disposición proviene del UCC y es prácticamente igual a la Sec. 2-420 de la LTC, *supra*.

Al resolver que una causa de acción surgió cuando se negoció cada cheque, y no cuando se negoció el último de los cheques, dicha corte compiló la gama de argumentos que se han empleado en las distintas decisiones antes citadas para descartar la aplicación del *discovery rule.* Según indica, el argumento más utilizado es que dicha regla resulta incompatible con los propósitos del UCC en cuanto a los fines de confiabilidad, finalidad, predictibilidad, uniformidad y eficiencia de las transacciones comerciales. <u>Rodrigue v. Olin Employees Credit Union</u>, *supra*, págs. 445-446. Ello, pues la utilidad de los instrumentos negociables radica precisamente

_____

<u>Santa Fe Federal Employees Federal Credit Union</u>, 52 P.3d 412 (N.M. Ct. App. 2002); <u>UNR-Rohn, Inc. v. Summit Bank of Clinton County</u>, 687 N.E.2d 235 (Ind. Ct.App. 1997); <u>Stjernholm v. Life Ins. Co. of N.A.</u>, 782 P.2d 810 (Colo. Ct. App. 1989); <u>Branford State Bank v. Hackney Tractor Co.</u>, 445 So.2d 541 (Fla. Dist.Ct. App. 1984).

en su habilidad de ser aceptados prontamente por los acreedores y se debe buscar reforzar su negociabilidad, cosa que se vería perjudicada si se aplica el *discovery rule*. *Íd*.

El Séptimo Circuito también señaló en <u>Rodrigue v. Olin Employees Credit Union</u>, *supra,* que el comercio moderno exige la rápida y fácil resolución de disputas, por lo que la pronta identificación de los sujetos responsables y la certeza sobre la duración del periodo en el que se podría exigir responsabilidad es vital. Esto requiere que las distintas leyes que incorporan el UCC sean mecánicas en su aplicación, pues el interés respecto a la finalidad y predictibilidad de los instrumentos supera en importancia otras consideraciones como lo sería la resolución equitativa de un caso en particular.

Se señala, además, que uno de los objetivos del UCC es la promoción de la utilización de métodos rigurosos de contabilidad. *Íd*. La Corte de Apelaciones para el Séptimo Circuito reconoció que esta postura puede dar lugar ocasionalmente a resultados poco equitativos. A estos efectos, citando a la Corte Federal de Apelaciones para el Tercer Circuito, expresó que:

> "As tempting a choice as that may be in an individual case [i.e. favoring 'the rights of unsuspecting victims of forgery over the broader interest of the commercial world'], we think the public would be poorly served by a rule that effectively shifts the responsibility for careful bookkeeping away from those in the best position to monitor accounts and employees. Strict application of the limitation period, while predictably harsh in some cases best serves the twin goals of swift resolution of controversies and 'certainty of liability' advanced in the UCC.

> *Íd.*, pág. 447 citando <u>Menichini v. Grant</u>, *supra*, pág. 1230.

A pesar de lo mecánica que pueda aparentar ser la aplicación del término prescriptivo en cuestión, se ha reconocido una excepción: la ocultación fraudulenta. Véase <u>Pero´s Steak and Spaghetti House v. Lee</u>, *supra*. Si una parte alega correcta y oportunamente que fue víctima de ocultación fraudulenta se entiende que la figura de la prescripción no surte efecto hasta que cesa dicha ocultación. *Íd.*

Con el beneficio de los preceptos antes expuestos respecto al término prescriptivo ante nuestra consideración, procedemos a resolver la controversia ante nos.

V.

COSSEC alega que no es necesario acudir a otras jurisdicciones ya que la LTC establece que los principios generales del derecho aplicarán de modo supletorio. Según arguye, esto nos llevaría a concluir que su causa de acción no surgió hasta que descubrieron, mediante la auditoría que realizaron tras colocar a la Cooperativa en sindicatura, el supuesto esquema de apropiación indebida de cheques.

Por su parte, el Banco Popular arguye que a la hora de pautar en qué momento comienza a transcurrir el término prescriptivo en controversia debemos garantizar la consecución del propósito uniformador de la LTC, según quedó establecido en la Sec. 1-102, *supra*, y aplicar la norma imperante en las demás jurisdicciones en las que se adaptó el UCC. Es decir, alega que debemos determinar que el término

prescriptivo transcurre desde que el cheque es negociado, no desde que se descubre la apropiación indebida.

En _St. Paul Fire & Marine v. Caguas Fed. Savs._, 121 D.P.R. 761 (1988) la Corte Federal de Apelaciones para el Primer Circuito nos certificó dos preguntas sobre la relación entre la entonces vigente Ley Uniforme de Instrumentos Negociables de Puerto Rico, _supra_, y el derecho general de daños y perjuicios. Específicamente, nos solicitó que le orientáramos, en primer lugar, sobre si el banco que paga un cheque en virtud de un endoso no autorizado responde al tomador -persona a nombre de quien se libra el cheque- aún cuando no fue negligente, y si la negligencia del tomador constituye una defensa para el banco. _Íd._, pág. 763.

Al resolver, establecimos que la Ley Uniforme de Instrumentos Negociables de Puerto Rico, _supra_, por ser una disposición especial, regía lo relativo a las acciones por apropiación indebida de instrumentos negociables, por lo que aplicaba por encima del Art. 1802 del Código Civil, _supra_. Ello, pues creaba una acción directa e independiente del librador -quien libra o emite el cheque- y del tomador contra el banco que paga el cheque, aun cuando no haya mediado negligencia del banco al pagar a quien no tenía derecho a los fondos. _Íd._, págs. 766.

En el referido precedente reiteramos que en nuestra jurisdicción rige la norma "general de hermenéutica que presume que el legislador de Puerto Rico, al adoptar un estatuto de otra jurisdicción, también adopta la interpretación del mismo hecha por el tribunal de más alta

jerarquía de ese lugar a la fecha de adopción". *Íd*., págs. 768-769. Allí también expusimos que "[e]n buena teoría de adjudicación y hermenéutica legal es esa disposición y su historial los que deben guiar el análisis del asunto que nos ocupa a fines de responder las preguntas certificadas…." *Íd*., pág. 767.

Cónsono con lo resuelto en St. Paul Fire & Marine v. Caguas Fed. Savs., y siguiendo la línea de los foros federales y estatales antes reseñados, estimamos que el propósito uniformador de la LTC, según quedó específicamente plasmado en la Sec. 1-102, su*pra*, junto a los demás principios esbozados en dicha sección deben regir la resolución de la controversia ante nos sobre los principios generales del derecho, aun cuando éstos podrían ser aplicables en virtud de la Sec. 1-103, *supra*. En consecuencia -y por entender que es lo más cónsono con los principios de confiabilidad, finalidad, predictibilidad, uniformidad y eficiencia de las transacciones comerciales que inspiran el UCC y la LTC- resolvemos que el término prescriptivo de tres años fijado por la Sec. 2-118, *supra*, para las acciones de apropiación indebida de instrumentos negociables provista por la Sec. 2-420, *supra*, comienza a transcurrir en el momento que el cheque es negociado. Es decir, la causa de acción por apropiación indebida de un cheque surge inmediatamente luego de que se hace u obtiene el pago de cada cheque, y es en ese momento que el término prescriptivo comienza a transcurrir.

A nuestro entender, el esquema normativo de la LTC, así como los principios que encarna, tienen el fin de asegurar y

fortalecer la negociabilidad de los instrumentos. Es preciso, pues, que los términos prescriptivos sean aplicados de forma tal que se garantice el mayor grado de finalidad a las transacciones comerciales mediante la pronta fijación de responsabilidad. Esto redunda, a su vez, en que las transacciones se puedan llevar a cabo con la rapidez y la fluidez que exige el mercado del Siglo XXI. El término prescriptivo de tres años, contado a partir de que el cheque se negocia, provee tiempo suficiente para que una parte descubra y reclame las cantidades que le hayan sido apropiadas indebidamente por medio de un cheque.

Al así resolver descartamos la aplicación de la teoría cognoscitiva del daño a la hora de determinar en qué momento surge la causa de acción en cuestión. Luego de sopesar los intereses involucrados, no podemos sino concluir que, en lo que respecta a esta causa de acción, no están presentes las consideraciones de índole liberal que exigirían que tomáramos en cuenta un elemento subjetivo a la hora de fijar cuándo comienza a transcurrir el término prescriptivo. Ello, pues, entendemos que es posible descubrir la apropiación indebida dentro de los tres años desde que un cheque es negociado si se emplea la diligencia razonable.

En el pasado, hemos exigido que las personas establezcan sistemas de contabilidad y métodos de negocio razonablemente dirigidos a evitar o hacer difícil la falsificación de endosos, especialmente de sus empleados. Solé Electric, Inc. v. Bank of Nova Scotia, 103 D.P.R. 423, 428-429 (1975). Véase, además, Portilla v. Banco Popular, 75 D.P.R. 100

(1953). Si bien es cierto que nuestras expresiones a tales efectos fueron hechas en casos resueltos bajo el antiguo Código de Comercio y la Ley Uniforme de Instrumentos Negociables, *supra*, ello sólo apunta a que, en lo que respecta a la aplicación de legislación cambiaria, siempre se ha exigido que las personas empleen sistemas de contabilidad que respondan a la realidad y al ritmo comercial de su época.

Al igual que lo han hecho otras cortes, estimamos que, si bien en un caso específico una parte podría quedar desprovista de un remedio luego de trascurridos los tres años, la pronta resolución de las controversias comerciales y la seguridad en el tráfico de los instrumentos resulta más apremiante. Véase <u>Rodrigue v. Olin Employees Credit Union</u>, *supra*, citando <u>Menichini v. Grant</u>, *supra.* Resolver que es de aplicación la teoría cognoscitiva del daño, redundaría en que el que paga o cambia un cheque sin conocer que el endoso es fraudulento podría estar expuesto a responder indefinidamente, o por un periodo mucho más extenso que los 3 años que dispone la ley, lo cual evidentemente entorpecería y sería perjudicial para el flujo comercial.

Ello no significa, sin embargo, que una persona a quien se le haya hecho imposible detectar la apropiación indebida por razón de que otra lo impedía mediante maquinaciones insidiosas quedará desamparada. Ello, pues la jurisprudencia ha reconocido mecanismos particulares para casos de ocultación fraudulenta. Hemos definido tal engaño como la conducta de una parte que oculta a otra hechos materiales que le impiden descubrir un acto ilegal o una causa de acción que

ha surgido a su favor. González v. Pérez, 57 D.P.R. 860, 868 (1941). Mediante esta excepción se busca evitar que una parte pueda "beneficiarse de su propia maldad amparándose en el estatuto, cuyo propósito es impedir la ilegalidad y el fraude". *Íd*. A la persona que alegue y pruebe ser víctima de ocultación fraudulenta no se le puede exigir que ejercite su causa de acción dentro del término prescriptivo. El momento específico en que éste comience a transcurrir cuando se establezca que medió ocultación fraudulenta deberá determinarse caso a caso.

VI.

En el caso de autos, el término prescriptivo de tres años de las causas de acción de COSSEC contra el Banco Popular comenzó a transcurrir cuando cada uno de los cheques fue negociados por el Banco Popular. Por ende, las causas de acción que COSSEC pudiera poseer en contra del Banco Popular por cheques negociados más de tres años antes de la presentación de la demanda, están prescritas. En vista de ello, todas las causas de acción contra del Banco Popular relativas a cheques negociados por el Banco Popular antes del 4 de febrero de 2004 deberán desestimarse.

En lo que respecta a dicha institución bancaria, COSSEC no ha alegado oportunamente que ésta haya incurrido en el tipo de conducta que, de probarse, demuestre que se haya cometido ocultación fraudulenta y que excluya la aplicación del término prescriptivo desde la negociación de los

cheques.[7] Como indicamos anteriormente, en la demanda se le imputó al Banco Popular no ejercer el cuidado ordinario al verificar los endosos; obrar de mala fe al no investigar el aumento de actividad transaccional de las cuentas de los co-demandados en cuestión; e incurrir en negligencia crasa al autorizar el depósito de cheques fraudulentos e ilegales. En ningún momento se alegaron actos que indiquen que haya mediado ocultación fraudulenta por parte del Banco Popular que pudieran justificar la exclusión de la aplicación del término prescriptivo. No obstante, nuestra decisión no impide que COSSEC continúe litigando la totalidad de sus reclamaciones contra los demás co-demandados.

VI.

Por los fundamentos antes expuestos, se confirma la sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de acuerdo con lo aquí dispuesto.

Se dictará Sentencia de conformidad.

Federico Hernández Denton<br>Juez Presidente

---

[7] Según surge del expediente no fue hasta que COSSEC presentó su alegato ante este Tribunal que alegó por primera vez que el Banco Popular autorizó las transacciones fraudulentas a sabiendas e intencionalmente y que se benefició de los fondos ilegalmente obtenidos. Aduce que, "[d]e probar las alegaciones de la demanda, culminado el descubrimiento de prueba y el juicio en su fondo, es posible que la demandante COSSEC demuestre la conducta fraudulenta del [Banco Popular]". Alegato de COSSEC, pág. 21. Sabido es que este Tribunal no considerará alegaciones que no hayan sido esgrimidas ante los foros inferiores. Además, según indica correctamente el Banco Popular en su Réplica al Alegato de COSSEC, en la demanda no se imputó conducta fraudulenta alguna Banco Popular.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Corporación Pública para la
Supervisión y Seguro de
Cooperativas de Puerto Rico
y Otros

    Peticionarios

                               CC-2008-829      Certiorari
      vs.

Manuel González López
y Otros

    Recurridos

SENTENCIA

San Juan, Puerto Rico, a 27 de agosto de 2010.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se confirma la sentencia del Tribunal de Apelaciones y se devuelve el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de acuerdo con lo aquí dispuesto.

Así lo pronuncia y manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco disiente con opinión escrita.

                             Aida Ileana Oquendo Graulau
                           Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico y Otros

       Peticionarios

          v.

Manuel González López y Otros

       Recurridos

*Certiorari*

CC-2008-829

Opinión disidente emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 27 de agosto de 2010.

En el día de hoy, la mayoría de este Tribunal concluye que el término prescriptivo de tres (3) años para instar una acción por apropiación indebida de instrumentos negociables que establece la Sección 2-118 de la Ley Núm. 208 de 17 de agosto de 1995, según enmendada, conocida como Ley de Transacciones Comerciales, 19 L.P.R.A. sec. 518, comienza a transcurrir desde el momento en que el instrumento se negocia. No obstante, disiento por entender que el término prescriptivo de tres (3) años debe comenzar a decursar desde el día en que la persona afectada conozca de la apropiación indebida.

I

El 4 de febrero de 2004, la Corporación Pública para la Supervisión y Seguro de Cooperativas de Puerto Rico (COSSEC) y otros, en adelante los peticionarios, presentaron una Demanda en contra del Sr. Manuel González López; su hermano, el Sr. Lino González López; el Banco Popular de Puerto Rico, en adelante, Banco Popular; y otras personas naturales y jurídicas. Los peticionarios alegaron que el Sr. Manuel González López se apropió ilegalmente de un millón ochocientos noventa y siete mil doscientos cincuenta y ocho dólares con noventa y cuatro centavos ($1,897,258.94) pertenecientes a los socios de la Cooperativa de Ahorro y Crédito de los Empleados de la Autoridad de Puertos y de la Autoridad Metropolitana de Autobuses, en adelante, la Cooperativa. Según arguyen los peticionarios, mientras el Sr. Manuel González López fungió como administrador de la Cooperativa desde el 1999 hasta el 2003 éste, con la ayuda de su hermano Lino González López, alegadamente emitió varios cheques a nombres de socios y personas ficticias los cuales endosó para luego depositar los fondos obtenidos ilegalmente en las cuentas bancarias personales que tenían ambos con el Banco Popular.

Respecto a la reclamación contra el Banco Popular, los peticionarios alegaron que éste no ejerció el cuidado ordinario al verificar los endosos de los cheques, obró de mala fe al no investigar el aumento de actividad transaccional de la cuenta operacional de la Cooperativa, incurrió en negligencia crasa al autorizar el depósito de

cheques fraudulentos, autorizó intencionalmente transacciones financieras fraudulentas, *inter alia*.

Así las cosas, el 5 de mayo de 2005, el Banco Popular presentó una moción solicitando que se dictara Sentencia por las alegaciones al amparo de la Regla 10.3 de Procedimiento Civil, 32 L.P.R.A. Ap. III. En lo que compete a la controversia de autos, alegó que el término prescriptivo de tres (3) años dispuesto en la Sección 2-118 de la Ley Núm. 208, *supra*, para instar una causa de acción por apropiación indebida de instrumentos negociables comenzaba a transcurrir a partir de que el instrumento se negociaba. Así, sostuvo que cada vez que el Banco Popular alegadamente pagaba uno de los supuestos cheques fraudulentos empezaba a contar el período prescriptivo de tres (3) años. Por lo tanto, en vista de que la Demanda fue presentada el 4 de febrero de 2004, sostuvo que todas las reclamaciones contra el Banco Popular por cheques pagados antes del 4 de febrero de 2001 estaban prescritas y debían desestimarse.

Posteriormente, el 11 de julio de 2005, los peticionarios presentaron su oposición a la moción presentada por el Banco Popular. Alegaron que las reclamaciones relacionadas con los cheques pagados o depositados antes del 4 de febrero de 2001 no estaban prescritas toda vez que el término prescriptivo dispuesto en la Sección 2-118 de la Ley Núm. 208, *supra*, empezaba a contar desde que el agraviado tenía conocimiento del daño,

o sea, desde que se descubría de la apropiación indebida y no desde que se negociaba el instrumento.

Luego de varios trámites procesales, el 27 de febrero de 2008, el Tribunal de Primera Instancia emitió una Sentencia Parcial Final en la que declaró Con Lugar la moción presentada por el Banco Popular. El foro primario concluyó que la causa de acción por apropiación indebida de instrumentos negociables surgía cuando éste se negociaba o se pagaba, independientemente de que la persona agraviada supiera o no que el instrumento se había negociado o pagado indebidamente. En consecuencia, el foro de instancia, *inter alia*,[8] desestimó todas las reclamaciones contra el Banco Popular por cheques depositados en o antes del 4 de febrero de 2001 y limitó las reclamaciones a los cheques posteriores a dicha fecha.

Inconformes, los peticionarios acudieron ante el Tribunal de Apelaciones. El tribunal *a quo* confirmó la Sentencia del Tribunal de Primera Instancia por entender que dicho foro actuó correctamente ya que en varios casos resueltos en diversos tribunales de Estados Unidos se había interpretado que el período prescriptivo para presentar una acción por apropiación indebida de instrumentos negociables comenzaba a decursar cuando dichos cheques son negociados o pagados, aunque el reclamante desconociera que estos

---

[8] El Tribunal de Primera Instancia desestimó además otras reclamaciones contra el Banco Popular con relación a gastos de honorarios, costas, entre otros. Véase, Opinión mayoritaria, pág. 4.

instrumentos habían sido negociados o pagados indebidamente.

Insatisfechos, los peticionarios acudieron antes nos.

II

A

La Ley Núm. 208, *supra*, contiene una serie de normas que regulan diversas actividades comerciales que se realizan en Puerto Rico. Varias de sus disposiciones están basadas en el *Uniform Commercial Code* el cual ha servido de modelo para la legislación comercial adoptada en algunos de los estados de la nación estadounidense. Exposición de Motivos de la Ley Núm. 208, *supra*.

La Ley Núm. 208, *supra*, se aprobó con el propósito de: "(a) simplificar, clarificar y modernizar el derecho que rige las transacciones comerciales; (b) permitir la continua expansión de prácticas comerciales por medio de las costumbres, los usos y los acuerdos entre las partes; [y] (c) uniformar el derecho entre las diversas jurisdicciones". Sección 1-102 de la Ley Núm. 208, supra, sec. 401.

La Ley Núm. 208, *supra*, contiene una serie de disposiciones que regulan los instrumentos negociables.[9]

---

[9] Según establece el inciso (a) de la Sección 2-104 de la Ley Núm. 208 de 17 de agosto de 1995, según enmendada, conocida como Ley de Transacciones Comerciales, 19 L.P.R.A. sec. 504, un instrumento negociable es:

una promesa o una orden incondicional de pago de una cantidad específica de dinero, con o sin intereses u otros cargos descritos en la promesa u orden, si el mismo:

Véase, Capítulo 2-Instrumentos Negociables de la Ley Núm. 208, 19 L.P.R.A. secs. 501 *et seq*. A tales efectos, se establecen normas relacionadas con la negociación, cesión, endoso, ejecución y otros aspectos referentes a este tipo de actividad comercial. Véase, *Íd*.

Como parte de las disposiciones que contiene la Ley Núm. 208, *supra*, sobre este tipo de transacción, el estatuto permite el que se pueda instar una acción por apropiación indebida de instrumentos negociables. Conforme a la Sección 2-420 de la Ley Núm. 208, 19 L.P.R.A. sec. 670:

> **[u]n instrumento será apropiado indebidamente** si el mismo se toma mediante cesión, que no constituye negociación, de una persona que no tiene derecho a exigir el cumplimiento del instrumento, o **si un banco hace u obtiene el pago del instrumento para una persona que no tenía derecho a exigir el cumplimiento del instrumento o a recibir su pago**…".

En aquellos casos en que se inste una acción contra una persona o banco por apropiación indebida de instrumentos negociables, la Ley Núm. 208, *supra*, establece

---

(1) Es pagadero al portador o a la orden al momento de su emisión o cuando primero adviene a la posesión de un tenedor;

(2) es pagadero a la presentación o en una fecha específica, y

(3) no especifica otro compromiso o instrucción por parte de la persona que promete u ordena el pago que no sea el pago del dinero, pero la promesa u orden puede contener: (A) un compromiso o poder para dar, mantener o proteger colateral para garantizar el pago, (B) una autorización o poder al tenedor para admitir sentencia o liquidar la colateral o disponer de ella de otra forma, o (C) una renuncia al beneficio de cualquier ley que exista concediéndole una ventaja o protección a un deudor.

una presunción de que la medida de responsabilidad será la cantidad que debía pagarse en el instrumento que se apropió indebidamente. Sección 2-420, inciso (b) de la Ley Núm. 208, *supra*. No obstante, en ningún caso, la persona damnificada podrá recobrar más del monto establecido en dicho instrumento. *Íd*.

La persona agraviada que así desee presentar una acción por apropiación indebida de instrumentos negociables deberá hacerlo "dentro de los tres (3) años siguientes a la fecha en que surja la causa de acción". Sección 2-118, inciso (g) de la Ley Núm. 208, 19 L.P.R.A. sec. 518(g). Según se establece en la Ley Núm. 208, *supra*, este término se considera como uno de prescripción y podrá ser interrumpido por medio de una reclamación judicial, por el reconocimiento de las obligaciones o por la renovación del instrumento en que se base el derecho del titular.[10] Véase, *Íd*., sec. 518(i).

Aunque la Ley Núm. 208, *supra*, señala el término que tiene una persona para instar una acción por apropiación indebida de instrumentos negociables, el estatuto no indica específicamente cuando es que surge la causa de acción a partir de la cual comienza a decursar el término de tres (3) años.

---

[10] Los términos prescriptivos admiten su interrupción o suspensión. *Muñoz v. Ten General*, 167 D.P.R. 297, 302 (2006). Ello significa que estos plazos, en la medida en que se interrumpan oportunamente, puede ser indefinidos, ya que su interrupción puede ocurrir en un número ilimitado de ocasiones. *Íd*.

No obstante, a pesar de que la Ley Núm. 208, *supra*, no contiene alguna disposición específica que indique el momento a partir del cual nace la causa de acción por apropiación indebida de instrumentos negociables, este estatuto hace referencia al uso de los principios generales del derecho para suplir las lagunas que contenga dicha medida. Al respecto, la Sección 1-103 de la Ley Núm. 208, 19 L.P.R.A. sec. 402, señala que: "[a] menos que sean desplazados por disposiciones particulares de esta Ley, los principios generales del derecho en nuestra jurisdicción aplicarán de modo supletorio".[11]

Por otra parte, cuando existen lagunas en leyes especiales aplica lo dispuesto en el Art. 12 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 12. Al respecto, el mencionado precepto dispone que "[e]n las materias que se rijan por leyes especiales, la deficiencia de éstas se

---

[11] El origen de estos principios ha sido objeto de mucha discusión por la doctrina. Por un lado, se dice que los principios generales del derecho son normas básicas, superiores al Derecho positivo, sacadas del derecho natural, de la conciencia social y de la naturaleza de las cosas. Véanse, J. Santos Briz y otros, *Tratado de Derecho Civil*, Barcelona, Ed. Bosch, 2003, T. I, págs. 262-263. Por otro lado, existe otra corriente que señala que estos principios son las ideas fundamentales que informan el Derecho positivo, y que están subordinadas a éste, las cuales se encuentran contenidas en las leyes y costumbres. Véase, M. Albaladejo, *Derecho Civil*, 9na ed., Barcelona, Ed. Bosch, 1983, T. I, pág. 111.

A pesar de existir estas diferencias respecto al origen de los llamados principios generales del derecho, varios autores concurren en que al momento del juez resolver alguna controversia que requiera la aplicación de estos principios, el juez debe acudir en primera instancia a aquellos preceptos que estén recogidos en las normas que nacen de otras fuentes jurídicas. Véase, *Íd.*, págs. 113-114; J. Santos Briz y otros, *op. cit.*, pág. 263; J.L. Lacruz Berdejo, *Parte General del Derecho Civil*, Barcelona, Ed. Bosch, 1982, V. I, pág. 182-183. Si ello resultare infructuoso, entonces utilizará aquellos principios que se deriven de la justicia, según concebida en nuestro ordenamiento jurídico, y que no sean contradictorios con los principios fundamentales acogidos por éste. Véanse, *Íd.*

suplirá por las disposiciones de este título". *Íd.* Por lo tanto, si una ley especial no contiene normas aplicables a una situación en particular, se deberá acudir al Código Civil para suplir las lagunas que tenga dicho estatuto. *Mun. de San Juan v. Prof. Research*, 171 D.P.R. 219, 236 (2007).

B

La prescripción extintiva es una figura de naturaleza sustantiva y no procesal, la cual se rige por los principios que informan el Derecho Civil. *Vega v. J. Pérez & Cía, Inc.*, 135 D.P.R. 746, 753 (1994). El propósito de la prescripción extintiva es evitar que haya incertidumbre en las relaciones jurídicas y sancionar la dejadez en el ejercicio de los derechos. *Santos de García v. Banco Popular*, 172 D.P.R. 759, 766 (2007).

El legislador ha establecido distintos términos de prescripción para la extinción de los diversos derechos y acciones. *Íd.* También ha indicado en varias ocasiones el momento en que comenzarán a transcurrir dichos plazos.[12] Empero, si el legislador no ha expresado el momento en que comenzará a decursar el término prescriptivo para reclamar determinado derecho, tal plazo se contará a partir del día

---

[12] Véase, a modo de ejemplo, el Art. 1870 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5300 ("El tiempo para la prescripción de acciones que tienen por objeto reclamar el cumplimiento de obligaciones de capital con interés o renta, corre desde el último pago de la renta o del interés".) y el Art. 1871 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5301 ("El tiempo de la prescripción de las acciones para exigir el cumplimiento de obligaciones declaradas por sentencia, comienza desde que la sentencia quedó firme".).

en que puede ejercitarse la acción. Art. 1869 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5299.

En nuestra jurisdicción hemos adoptado la teoría cognoscitiva del daño para determinar el momento en que una persona puede ejercitar una acción por los daños y perjuicios que otra persona le haya causado. *Tenorio v. Hospital Dr. Pila*, 159 D.P.R. 777, 782 (2003). Dicha teoría postula que el término prescriptivo empezará a decursar tan pronto el reclamante tuvo conocimiento del agravio ya que es en ese instante en que puede alegarse y reclamarse la indemnización correspondiente. *Nazario v. E.L.A.*, 159 D.P.R. 799, 823 (2003).

Al así resolver, este Tribunal ha aceptado que el conocimiento que el titular de la acción tenga acerca de si ésta ha nacido o no es un factor determinante al verificar si dicha causa está prescrita o no. *Vega v. J. Pérez & Cía, Inc.*, *supra*, pág. 754. Ese conocimiento es esencial ya que una ley no puede suprimir los derechos de una persona sin que se le haya dado a ésta la oportunidad de presentar sus reclamos ante el tribunal. Véase, *Alicea v. Córdova*, 117 D.P.R. 676, 695 (1986); *Wilson v. Iseminger*, 185 U.S. 55, 62 (1902). Por tal razón, hemos resuelto que "un estatuto de prescripción que tenga el efecto de exigirle a los demandantes instar su acción antes de que tengan conocimiento de que tal causa de acción existe, viola el debido proceso de ley". *Vera v. Dr. Bravo*, 161 D.P.R. 308, 327 (2004) citando a *Vega v. J. Pérez & Cía, Inc.*, *supra*,

pág. 754. Véanse, además, *Santiago v. Ríos Alonso*, 156 D.P.R. 181, 190 (2002); *Martínez v. Bristol Myers, Inc.*, 147 D.P.R. 383, 405 (1999); *Alicea v. Córdova*, *supra*.

C

En varias jurisdicciones de los Estados Unidos que han adoptado legislación similar al *Uniform Commercial Code*, los tribunales han rechazado adoptar la teoría cognoscitiva del daño para establecer el momento en que comenzará a transcurrir el término prescriptivo dispuesto para instar una acción por apropiación indebida de instrumentos negociables.[13]

Según han expresado algunos de estos tribunales, el objetivo del *Uniform Commercial Code* es la finalidad y predictibilidad de las transacciones comerciales. *Menichini v. Grant*, 995 F.2d 1224 (3er Cir. 1993). Tomando en consideración dicho propósito, han señalado que si se aplica la teoría cognoscitiva del daño a las acciones que involucran instrumentos negociables, concediéndole así al demandante un plazo mayor para presentar su demanda, ello debilitaría la finalidad de las transacciones que involucren instrumentos negociables, lo cual convertiría a estos instrumentos en vehículos de comercio poco eficientes. *Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434 (7mo Cir. 2005). Por tal razón, han optado por

---

[13] Véase, Opinión mayoritaria, pág. 15, donde se mencionan algunos casos en donde se ha rechazado la teoría cognoscitiva del daño y se ha resuelto que la acción por apropiación indebida de instrumentos negociables surge a partir de que el instrumento de negocia.

concluir que la causa de acción por apropiación indebida de instrumentos negociables surge a partir de que el instrumento se ha negociado.[14] Señalan que, aunque esta norma puede ser severa en algunos casos, es la mejor forma de adelantar los objetivos que establece el *Uniform Commercial Code*. *Husker News Co. v. Mahaska State Bank*, 460 N.W.2d 476 (Iowa 1990).

A pesar de que hay varios tribunales estatales y federales que han descartado la teoría cognoscitiva del daño, existen otros tribunales en los Estados Unidos que sí han acogido dicha postura. Véanse, *UNR-Rohn, Inc. v. Summit Bank of Clinton County*, 687 N.E.2d 235 (Ind. Ct.App. 1997); *DeHart v. First Fidelity Bank, N.A./South Jersey*, 67 B.R. 740 (D.N.J. 1986); *Brandford State Bank v. Hackney Tracto Co.*, 445 So.2d 541 (Fla. Dist.Ct. App. 1984).

Por un lado, hay tribunales que han aplicado consistentemente la teoría cognoscitiva del daño para determinar el momento en que comienza a transcurrir una acción por los daños que haya sufrido una persona y entienden que el establecer una excepción en cuanto a los daños que involucre la apropiación indebida de un instrumento negociable sería sumamente incongruente e inconsistente con su respectiva jurisprudencia. *UNR-Rohn, Inc. v. Summit Bank of Clinton County*, *supra*. Por otro lado, otros tribunales han señalado que no sería

---

[14] *Íd.*

equitativo el que a una persona que ha sido agraviada, y que ignora que tiene disponible una acción por el daño que ha sufrido, se le deniegue su día en corte simplemente por desconocer que existía la causa de acción. *DeHart v. First Fidelity Bank, N.A./South Jersey*, *supra*.

### III

En el caso de autos, la mayoría de este Tribunal sostiene que el término prescriptivo para instar una acción por apropiación indebida de instrumentos negociables debe comenzar a transcurrir a partir de que se negocia el instrumento. No puedo estar conteste con esa conclusión.

Comencemos por recordar que, aunque el legislador estableció en la Ley Núm. 208, *supra*, que el plazo prescriptivo para instar una acción por apropiación indebida de instrumentos negociables será de tres (3) años a partir de que surge la causa de acción, guarda silencio en cuanto a cuando se entenderá que ha nacido la causa de acción. Según la normativa expuesta, si el legislador no expresa el momento a partir del cual comienza a transcurrir un término prescriptivo, tal plazo empezará a correr desde el día en que pueda ejercitarse la causa de acción. Por lo tanto, al legislador no expresar el momento a partir del cual se puede instar una acción por apropiación indebida de instrumentos negociables, el término prescriptivo de tres (3) años debe contarse a

partir de que pueda ejercitarse la causa de este tipo de acción.

Conforme al derecho expuesto, el momento en que una persona puede ejercitar una acción por apropiación indebida de instrumentos negociables es desde que ésta conoce del daño, o sea, desde que tiene conocimiento de que el instrumento fue apropiado indebidamente. Ello se debe a que el agraviado por la apropiación indebida no puede presentar su reclamación hasta que sepa que tiene disponible dicha causa de acción. Una vez la persona afectada conoce del daño sufrido por tal apropiación, será entonces cuando ésta podrá alegar y reclamar la indemnización correspondiente.

En segundo lugar, el término dispuesto en la Sección 2-118 de la Ley Núm. 208, *supra*, para instar la acción por apropiación indebida es uno de prescripción. Por lo tanto, por ser un plazo prescriptivo, si se le exige al agraviado instar la acción por apropiación indebida de instrumentos negociables antes de que tenga conocimiento de que dicha causa existe, se quebrantaría el debido proceso de ley. El permitir que el término prescriptivo se active antes de que la persona afectada conozca que tiene disponible este tipo de acción, podría evitar que dicha persona pueda instar su reclamación si se percata de su derecho luego de transcurrido el plazo establecido. Por lo tanto, la conclusión a la que llega la mayoría de este Tribunal, tendría el efecto de impedir que la parte agraviada tenga

la oportunidad de poder hacer valer sus derechos en los tribunales, lo cual no puede prevalecer en nuestra jurisdicción.

Entiendo que si una persona se demora más de tres (3) años en instar una acción por apropiación indebida de instrumentos negociables luego de conocer que tiene derecho a presentar dicha reclamación, sin que haya interrumpido el término prescriptivo durante todos esos años, ciertamente debe perder su derecho a recobrar la indemnización que le pudiese haber correspondido. Su inercia en hacer valer sus derechos debe ser castigada según lo establecen los propósitos de la prescripción extintiva.

Sin embargo, en el caso de autos no se tuvo conocimiento de las alegadas apropiaciones indebidas de varios cheques sobre fondos pertenecientes a la Cooperativa hasta luego de transcurridos más de tres (3) años desde que algunos de éstos cheques se negociaran. Por lo tanto, exigir el que se inste la acción por apropiación indebida de instrumentos negociables dentro de los tres (3) años siguientes a que se negociaran los cheques en controversia, significaría que los peticionarios hubiesen tenido que presentar su reclamación antes de que supieran lo ocurrido. Esto sería imposible.

Por último, la Opinión mayoritaria hace un recorrido a través de las decisiones emitidas en diversos foros federales y estatales de Estados Unidos sobre la

controversia ante nos. Ello debido a que la Sección 1-102 de la Ley Núm. 208, *supra*, establece como uno de los propósitos de dicha medida el lograr uniformar el derecho entre las diversas jurisdicciones.

No obstante, vemos que aun cuando se obviaron los principios reconocidos en nuestro ordenamiento y se optó por acudir a otras jurisdicciones de Estados Unidos, las decisiones emitidas no son uniformes. Aunque varios tribunales de los Estados Unidos han decidido que el momento en el cual surge la causa de acción en una reclamación por apropiación indebida de instrumentos negociables es cuando se negocia el instrumento, existen jurisdicciones que han determinado que la causa de acción surge cuando la persona agraviada conoce del daño causado por la apropiación indebida.

En aquellos lugares donde se ha optado por acoger la teoría cognoscitiva del daño se ha concluido que el resolver lo contrario sería incongruente con su respectiva jurisprudencia e impediría que las personas que aun desconocen de la acción tengan su día en corte. Ello es cónsono con la normativa que impera en nuestra jurisdicción sobre el particular.

Además, la ausencia de uniformidad en Estados Unidos en cuanto a la norma a aplicarse a la controversia de autos, fortalece la utilización de los principios generales del derecho establecidos en nuestro ordenamiento jurídico. Conforme a estos, concluimos que el término

prescriptivo de tres (3) años que concede la Ley Núm. 208, *supra*, para instar una acción por apropiación indebida de instrumentos negociables comienza a transcurrir a partir de que la persona agraviada conoce que el instrumento se negocia.

IV

Por los fundamentos expuestos, disiento respetuosamente de la Opinión mayoritaria. En consecuencia, revocaría el dictamen emitido por el Tribunal de Apelaciones y devolvería el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de conformidad con lo resuelto en esta Opinión disidente.

                                   Mildred G. Pabón Charneco
                                   Jueza Asociada