ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III-ESPECIAL

| | | |
|---|---|---|
| PR RECOVERY AND DEVELOPMENT JV, LLC.<br><br>Apelado<br><br>v.<br><br>THE WOMAN FROM MALLORCA, INC., IRON SPHYNX, CORP., Y MARÍA S. FIGUEROA LUGO T/C/C MARÍA SOCORRO FIGUEROA LUGO<br><br>Apelantes | KLAN202301046 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Civil Núm.: SJ2019CV03405<br><br>Sobre: Cobro de Dinero, Ejecución de Hipoteca y Ejecución de Gravamen Mobiliario |

Panel integrado por su presidente, el Juez Figueroa Cabán, la Jueza Grana Martínez y el Juez Rodríguez Flores

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico a 27 de marzo de 2024.

Comparecen The Woman from Mallorca, Inc., Iron Sphynx, Corp., y la señora María S. Figueroa Lugo, en conjunto las apelantes, quienes nos solicitan que revoquemos la *Resolución* emitida el 25 de octubre de 2023. Mediante la misma, el Tribunal de Primera Instancia, Sala de San Juan, en adelante TPI, declaró no ha lugar la *Solicitud de Reconsideración* que presentaron las apelantes, quienes entienden que no procedía declarar ha lugar la *Demanda* sobre cobro de dinero, ejecución de hipoteca y ejecución de gravamen mobiliario, ni la *Solicitud de Sentencia Sumaria* presentadas por PR Recovery and Development, en adelante PRRD o la apelada.

Por los fundamentos que expondremos a continuación, se confirma la *Resolución* apelada.

Número Identificador
SEN2024_____

**-I-**

Según surge del expediente ante nos, PRRD presentó una demanda por cobro de dinero, ejecución de hipoteca y ejecución de gravamen mobiliario en contra de las apelantes.[1] En la misma reclamó el pago de las cantidades adeudadas bajo el contrato de préstamo suscrito entre las partes, o en su defecto, la ejecución de la hipoteca y restantes garantías constituidas bajo aquel.

Posteriormente, las apelantes presentaron su *Contestación a Demanda con Reserva de Derechos Bajo la R. 6.2(c)*, en la cual sostuvieron que la apelada no ostenta legitimación activa ni buena fe para cobrar la acreencia y que el Banco de Desarrollo Económico, en adelante BDE, estaba impedido de cederle el préstamo objeto del litigio a PRRD.[2]

Así las cosas, PRRD presentó una *Solicitud de Sentencia Sumaria*.[3] Adujo que es el acreedor legítimo de las apelantes y que no existe controversia sobre los hechos materiales del caso de autos. Por tal razón, solicita que se dicte sentencia sumaria y que se obligue a las apelantes a pagar las cantidades adeudadas, o en su defecto, se venda el inmueble hipotecado en pública subasta y con el producto de la venta se pague a la apelada el importe de su reclamación.

Por su parte, las apelantes presentaron una *Oposición a Solicitud de Sentencia Sumaria*.[4] En esta reafirmaron los planteamientos esbozados en su contestación a la demanda. En esencia, sostuvieron que

---

[1] Apéndice de las apelantes, págs. 1-75.
[2] *Id.*, págs. 76-83.
[3] *Id.*, págs. 84-106.
[4] *Id.*, págs. 107-195.

la sentencia sumaria era improcedente porque existe controversia sobre la legitimación activa de PRRD para cobrar la acreencia reclamada.[5] Del mismo modo, alegaron que el pleito de epígrafe no está maduro hasta tanto no se resuelva el pleito del BDE, en virtud del cual se impugna la validez del contrato de cesión entre aquel y PRRD.[6]

En desacuerdo, PRRD presentó una *Réplica a Oposición a Moción de Sentencia Sumaria* en la que arguyó, entre otras alegaciones, que la *Ley de Transacciones Comerciales* lo legitima como tenedor de los pagarés, por lo que tiene derecho a exigir el cumplimiento de la obligación que reclama y que la determinación del pleito sobre la validez del contrato de transferencia de préstamos comerciales entre el BDE y PRRD, no afecta la condición de deudoras de las apelantes.[7]

Tras evaluar los escritos de las partes y los documentos que obran en el expediente, el TPI declaró ha lugar la *Demanda* y la *Solicitud de Sentencia Sumaria*,[8] posterior a formular las siguientes determinaciones de hechos listadas a continuación:

1. El 7 de febrero de 2013, el BDE, The Woman, como deudora, y Figueroa Lugo, como garantizadora solidaria, otorgaron un Contrato de Préstamo (en adelante, el "Contrato de Préstamo"), autenticado por la notaria Yadira H. Rosario Rosario bajo el afidávit número 845, mediante por el cual [*sic*.] se le concedió a The Woman un préstamo por la suma $1,493,286.00 divido en las siguientes facilidades de crédito:

    a. Un préstamo interino y permanente por la suma principal de $1,363,286.00 (en adelante, el "Préstamo I"), y

---

[5] *Id.*, págs. 118-120.
[6] *Id.* págs. 110-112.
[7] Apéndice de la apelada, págs. 205-222.
[8] Apéndice de las apelantes, págs. 198-222.

b. Un préstamo a término por la suma principal de $130,000.00 (en adelante, el "Préstamo II").

2. El Préstamo I está evidenciado por un pagaré operacional emitido por The Woman, como deudora, y Figueroa Lugo el 7 de febrero de 2013 a favor del BDE, o a su orden, debidamente endosado a favor de PR Recovery, por la suma principal de $1,363,286.00 y vencimiento el 5 de febrero de 2039, autenticado bajo el afidávit número 846 de la notaria Yadira H. Rosario Rosario (en adelante el "Pagaré Operacional I").

3. El Préstamo II está evidenciado por un pagaré operacional emitido por The Woman, como deudora, y Figueroa Lugo el 7 de febrero de 2013 a favor del BDE, o a su orden, debidamente endosado a favor de PR Recovery, por la suma principal de $130,000.00 y vencimiento el 5 de febrero de 2018, autenticado bajo el afidávit número 847 de la notaria Público Yadira H. Rosario Rosario (en adelante el "Pagaré Operacional II").

4. El Contrato de Préstamo fue enmendado el 14 de febrero de 2014 mediante una carta suscrita por el BDE, The Woman como deudora y Figueroa Lugo, como garantizadora solidaria (en adelante, la "Enmienda I al Contrato de Préstamo").

5. El Contrato de Préstamo fue enmendado el 13 de junio de 2014 mediante carta suscrita por el BDE, The Woman como deudora y Figueroa Lugo, como garantizadora solidaria (en adelante, la "Enmienda II al Contrato de Préstamo").

6. El Contrato de Préstamo fue enmendado el 20 de enero de 2015 mediante carta suscrita por el BDE, The Woman como deudora, Figueroa Lugo y Iron, ambas como garantizadoras solidarias (en adelante, la "Enmienda III al Contrato de Préstamo").

7. PR Recovery es el tenedor físico y por endoso del Pagaré Operacional I y del Pagaré Operacional II.

8. Como colateral para asegurar el pago y cumplimiento puntual de sus obligaciones bajo el Contrato de Préstamo y toda obligación presente y futura de The Woman para con el BDE, ahora PR Recovery, ésta [*sic*.] entregó a PR Recovery el siguiente pagaré hipotecario, el cual está en posesión de PR Recovery:

Pagaré hipotecario emitido el 7 de febrero de 2013, por The Woman a favor de BDE, o a su orden, debidamente endosado a favor de PR Recovery por la suma principal de $1,493,286.00 (en adelante, el "Pagaré Hipotecario").

a. El Pagaré Hipotecario está garantizado por hipoteca constituida mediante la Escritura Número 10 de Hipoteca en Garantía de Pagaré, otorgada en San Juan, Puerto Rico, el 7 de febrero de 2013, la cual quedó inscrita bajo el sistema Karibe sobre la finca número 829 de San Juan Antiguo, Registro de la Propiedad, Primera Sección de San Juan, inscripción 21 (en adelante, la "Hipoteca").

9. La Hipoteca que garantiza el Pagaré Hipotecario grava la siguiente propiedad, cuyo titular registral es The Woman:

URBANA: CALLE SAN JUSTO de San Juan Antiguo. Solar: 23. Cabida: 254.08 Metros Cuadrados. Casa #23 de la Calle San Justo de esta Ciudad, terrera de piedra y azotea con un solar que mide 12.80 metros de ancho por 18.25 m de fondo y una superficie de 254.08 M.C. de las cuales hay edificados 237.28 M.C. y los 16.80 M.C. restantes están destinados a patio. Linda por la derecha entrando con la Sucesión Carbonell; por la izquierda con Felipe Hetch y por su frente con José Crespo.

10. El gravamen sobre el Pagaré Hipotecario quedó debidamente perfeccionado al haberse entregado al acreedor hipotecario la posesión del Pagaré Hipotecario, cuyo tenedor al presente lo es PR Recovery.

11. Como colateral adicional para asegurar el pago y cumplimiento puntual de sus obligaciones bajo el Contrato de Préstamo, el 7 de febrero de 2013, The Woman suscribió un Acuerdo de Gravamen Mobiliario (en adelante, el "Gravamen Mobiliario"), autenticado bajo el afidávit número 850 de la Notario Público Yadira H. Rosario Rosario, mediante el cual transfirió, cedió, otorgó y/o pignoró a favor de BDE, ahora PR Recovery, todo derecho, título y/o interés sobre todo el equipo y maquinaria, inventario y las cuentas por cobrar, presentes o futuras, y el producto de cualesquiera de ellos, incluyendo sin limitarse al equipo a ser adquirido por The Woman con los fondos del préstamo.

12. El Gravamen Mobiliario fue perfeccionado mediante la radicación de una declaración de financiamiento en el Departamento de Estado de Puerto Rico (en adelante, la "Declaración de Financiamiento").

13. El 7 de febrero de 2013, Figueroa Lugo otorgó una Garantía Continua e Ilimitada, autenticado [*sic*.] bajo el afidávit número 851 de la Notario Público Yadira H. Rosario Rosario, (en adelante, la "Garantía"), mediante la cual garantizó solidariamente el pago de todas las obligaciones presentes y futuras de The Woman.

14. The Woman, Iron Sphynx y Figueroa Lugo han incumplido con sus obligaciones de pago bajo el Contrato de Préstamo, la Garantía y los demás documentos de préstamo antes señalados. En específico, la Parte Demandada incumplió con las obligaciones contraídas bajo el préstamo hipotecario descrito al dejar de pagar las mensualidades vencidas, por lo que se [*sic.*] PR Recovery declaró las deudas vencidas en su totalidad y reclama las siguientes sumas adeudadas bajo el Contrato de Préstamo, la Garantía, el Pagaré Hipotecario y los demás documentos de préstamo, al 19 de julio de 2019:

The Woman, Iron y Figueroa Lugo, adeudan la suma de $2,078,227.59, la cual se compone de: (i) $1,426,403.02 por concepto de principal; más (ii) $489,117.42 por concepto de intereses acumulados y no pagados, cantidad que se continúa acumulando hasta su total y completo pago a razón de $312.64 diarios; más (iii) $13,378.55 por concepto de cargos por demora; más (iv) $149,328.60 por concepto de costas, gastos y honorarios de abogado pactados expresamente por las partes, según se desprende del Pagaré Hipotecario y otros documentos anteriormente descritos. Véase Anejo A esta moción,

15. Al presente, las obligaciones de pago de las demandadas se encuentran vencidas, son líquidas e inmediatamente exigibles.

16. Las gestiones de cobro por parte de PR Recovery para con las demandadas han resultado infructuosas.

17. A pesar de ello y de los requerimientos de pago de PR Recovery, al presente las demandadas, en incumplimiento de las obligaciones asumidas bajo el Contrato de Préstamo y los demás documentos de préstamo, no han saldado dicha deuda en su totalidad.

18. PR Recovery es tenedor de buena fe del Pagaré Operacional I, Pagaré Operacional II y Pagaré Hipotecario antes descritos, por lo que es el actual acreedor de las obligaciones que son objeto de la presente acción.[9]

A la luz de las determinaciones de hechos previamente citadas, el TPI razonó que PRRD demostró incontrovertiblemente, mediante prueba documental, fehaciente y admisible, que es el tenedor actual de los pagarés que evidencian el préstamo concedido a las apelantes y cuyo cobro y ejecución se solicita en este caso; que la propiedad gravada por la hipoteca consta

---

[9] *Id.*, págs. 205-208.

inscrita en el Registro de la Propiedad; el incumplimiento de la apelante con sus obligaciones de pago; y que la deuda reclamada se encuentra vencida, líquida y exigible.[10]

En desacuerdo con dicha determinación, las apelantes presentaron una moción de reconsideración[11] a la que PRRD se opuso[12], que el TPI declaró No Ha Lugar[13].

Insatisfechas, las apelantes presentaron una *Apelación* en la que invocan la comisión del siguiente error:

> ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR SIN LUGAR LA RECONSIDERACIÓN SOLICITADA Y SOSTENERSE EN SU DETERMINACIÓN DE "HA LUGAR" EN CUANTO A LA SOLICITUD DE SENTENCIA SUMARIA Y LA DEMANDA DE LA PARTE DEMANDANTE-APELADA YA QUE ANTE LA REALIDAD DE QUE LA LEGITIMIDAD Y BUENA FE DE LA TENENCIA DEL PAGARÉ HIPOTECARIO OBJETO DE LA PRESENTE CONTROVERSIA POR PARTE DE LA PARTE DEMANDANTE-APELADA SE ENCUENTRA *SUB JUDICE* EN UN PLEITO ACTIVO ANTE LOS TRIBUNALES DE PUERTO RICO LO CUAL REPRESENTA UNA REAL Y GENUINA CONTROVERSIA DE HECHOS Y DE DERECHO QUE AMERITA UNA VISTA EN SUS MERITOS [*SIC*.] EN ESTE CASO.

Oportunamente, la apelada presentó su *Alegato en Oposición a Apelación*.

Luego de revisar los escritos de las partes y los documentos que obran en autos, estamos en posición de resolver.

**-II-**

**A.**

La sentencia sumaria es un mecanismo procesal extraordinario y discrecional, que tiene el propósito de facilitar la solución justa y rápida de los litigios y casos civiles que no presenten controversias genuinas de hechos materiales y que, por

---

[10] *Id.*, págs. 218-220.
[11] *Id.*, págs. 223-231.
[12] *Id.*, págs. 238-250.
[13] *Id.*, págs. 263-264.

lo tanto, no ameritan la celebración de una vista en su fondo.[14] Se trata de un mecanismo para aligerar la tramitación de un caso, cuando de los documentos que acompañan la solicitud surge que no existe disputa sobre algún hecho material y lo que procede es la aplicación del derecho.[15]

Al respecto, la Regla 36.1 de Procedimiento Civil dispone que un reclamante debe "presentar una moción fundada en declaraciones juradas o en aquella evidencia que demuestre la inexistencia de una controversia sustancial de hechos esenciales y pertinentes, para que el tribunal dicte sentencia sumariamente a su favor sobre la totalidad o cualquier parte de la reclamación solicitada".[16]

El Tribunal Supremo de Puerto Rico, en adelante TSPR, ha declarado enfáticamente que quien se opone a una solicitud de sentencia sumaria tiene que ceñirse a ciertas exigencias en lo atinente a los hechos.[17] Esto es, recae sobre el oponente la obligación de citar específicamente los párrafos, según enumerados en el escrito de sentencia sumaria, que entiende están en controversia, y para cada uno, detallar la evidencia admisible que fundamenta su alegación, y especificar la página o sección de la evidencia que contradice o refuta el hecho.[18] Además, el oponente puede someter hechos materiales adicionales que alegadamente no están en controversia y que impiden la solución

---

[14] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC*, 208 DPR 263, 277-279 (2021); *Meléndez González v. M. Cuebas*, 193 DPR 100, 110-113 (2015); *Reyes Sánchez v. Eaton Electrical*, 189 DPR 586, 594 (2013); *Ramos Pérez v. Univisión de PR*, 178 DPR 200, 213 (2010).

[15] *Aponte Valentín v. Pfizer Pharmaceuticals, LLC, supra*, págs. 277-279; *Meléndez González v. M. Cuebas, supra*, págs. 110-113; *Ramos Pérez v. Univisión de PR, supra*, pág. 214.

[16] Regla 36.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1.

[17] *SLG Zapata-Rivera v. JF Montalvo*, 189 DPR 414, 432 (2013).

[18] *Id.*; 32 LPRA Ap. V, R. 36.3(b)(2).

sumaria del conflicto.[19] De así hacerlo, tiene la responsabilidad de, al igual que el proponente, enumerar los hechos en párrafos separados e indicar la pieza de evidencia que sostiene el hecho, con referencia específica a la parte de la evidencia que lo apoya.[20]

Finalmente, en *Meléndez González, et als. v. M. Cuebas, Inc. y Bohío Int., Corp*, *supra*, el TSPR estableció el estándar específico que debe utilizar el Tribunal de Apelaciones para revisar una sentencia sumaria dictada por el Tribunal de Primera Instancia:

> **Primero**, reafirmamos lo que establecimos en *Vera v. Dr. Bravo*, supra, a saber: el Tribunal de Apelaciones se encuentra en la misma posición del Tribunal de Primera Instancia al momento de revisar Solicitudes de Sentencia Sumaria. En ese sentido, está regido por la Regla 36 de Procedimiento Civil, *supra*, y aplicará los mismos criterios que esa regla y la jurisprudencia le exigen al foro primario. Obviamente, el foro apelativo intermedio estará limitado en el sentido de que no puede tomar en consideración evidencia que las partes no presentaron ante el Tribunal de Primera Instancia y no puede adjudicar los hechos materiales en controversia, ya que ello le compete al foro primario luego de celebrado un juicio en su fondo. La revisión del Tribunal de Apelaciones es una *de novo* y debe examinar el expediente de la manera más favorable a favor de la parte que se opuso a la Moción de Sentencia Sumaria en el foro primario, llevando a cabo todas las inferencias permisibles a su favor.

> **Segundo**, por estar en la misma posición que el foro primario, el Tribunal de Apelaciones debe revisar que tanto la Moción de Sentencia Sumaria como su Oposición cumplan con los requisitos de forma codificados en la Regla 36 de Procedimiento Civil, *supra*, y discutidos en *SLG Zapata-Rivera v. JF Montalvo*, supra.

> **Tercero**, en el caso de revisión de una Sentencia dictada sumariamente, el Tribunal de Apelaciones debe revisar si en realidad existen hechos materiales en controversia. De haberlos, *el foro apelativo intermedio tiene que cumplir con la exigencia de la Regla 36.4 de Procedimiento Civil y debe exponer concretamente cuáles hechos materiales encontró que están en controversia y cuáles están incontrovertidos*. Esta determinación puede hacerse en la Sentencia que disponga del

---

[19] *SLG Zapata-Rivera v. JF Montalvo*, *supra*, pág. 432.
[20] *Id.*; Regla 36.3(b)(3) de Procedimiento Civil, 32 LPRA Ap. V, R. 36.3(b)(3).

caso y puede hacer referencia al listado numerado de hechos incontrovertidos que emitió el foro primario en su Sentencia.

**Cuarto**, y por último, de encontrar que los hechos materiales realmente están incontrovertidos, el foro apelativo intermedio procederá entonces a revisar *de novo* si el Tribunal de Primera Instancia aplicó correctamente el Derecho a la controversia.[21]

**B.**

Los contratos constituyen una de las fuentes de las obligaciones en el ordenamiento jurídico puertorriqueño.[22] En el ámbito del derecho contractual rige el principio de libertad de contratación, según el cual los contratantes pueden establecer los pactos, cláusulas y condiciones que tengan por convenientes, siempre que no sean contrarios a las leyes, a la moral, ni al orden público.[23]

Una vez las partes acuerdan esos pactos, cláusulas y condiciones mediante un contrato, están obligadas a cumplir con los mismos.[24] Esto es así porque "[l]as obligaciones que nacen de los contratos tienen fuerza de ley entre las partes contratantes, y deben cumplirse al tenor de los mismos".[25] Este principio conocido como *pacta sunt servanda* impone a las partes contratantes la exigencia de cumplir con lo pactado pues supone la inalterabilidad de los acuerdos contenidos en el contrato.[26] De modo, que los contratos se perfeccionan por el mero consentimiento, y desde entonces obligan, no sólo al cumplimiento de lo expresamente pactado, sino también a todas las

---

[21] *Meléndez González, et als. v. M. Cuebas, Inc. y Bohío Int., Corp., supra*, págs. 118-119. (Énfasis en el original).
[22] Debido a que el contrato en controversia se suscribió previo a la aprobación del Código Civil de 2020, el presente trámite apelativo está regulado por el Código Civil de 1930. Art. 1042 del Código Civil, 31 LPRA sec. 2992.
[23] Art. 1207 del Código Civil, 31 LPRA sec. 3372.
[24] *Rodríguez García v. UCA*, 200 DPR 929, 943 (2018).
[25] Art. 1044 del Código Civil, 31 LPRA Sec. 2994.
[26] *Rodríguez García v. UCA, supra.*

consecuencias que según su naturaleza sean conformes a la buena fe, al uso y a la ley.[27]

### C.

El Art. 1631 del Código Civil de 1930 define el contrato de préstamo en los siguientes términos:

> Por el contrato de préstamo, una de las partes entrega a la otra, o alguna cosa no fungible para que use de ella por cierto tiempo y se la devuelva, en cuyo caso se llama comodato, o dinero u otra cosa fungible, con condición de volver [sic] otro tanto de la misma especie y calidad, en cuyo caso conserva simplemente el nombre de préstamo.
>
> El comodato es esencialmente gratuito.
>
> El simple préstamo puede ser gratuito o con pacto de pagar interés.[28]

Por su parte, el TSPR ha definido el contrato de préstamo como:

> […] unilateral, por cuanto sólo produce obligaciones para una de las partes, que es el prestatario; traslativo de dominio, en el sentido de que, con la entrega de la posesión, se entrega también su título, ya que el prestatario recibe la cosa para gastarla, estando este obligado a devolver el género y; gratuito u oneroso, según se hayan pactado el pago de intereses o no.
>
> Toda vez que el contrato de préstamo es uno unilateral, por generar obligaciones a cargo del prestatario, éste estará obligado a entregar lo prestado –con sus intereses si se pactaron– una vez el término haya vencido.[29]

### D.

La Ley Núm. 208-1995, conocida como la *Ley de Transacciones Comerciales*, según enmendada[30], se adoptó con la finalidad de simplificar, clarificar y modernizar el derecho que rige las transacciones comerciales, uniformar el derecho entre las diversas

---

[27] Art. 1210 del Código Civil, 31 LPRA sec. 3375.
[28] Art. 1631 del Código Civil, 31 LPRA sec. 4511.
[29] *Torres, Torres v. Torres et al*, 179 DPR 481, 492 (2010). (Citas omitidas).
[30] Sec. 1-101 de la Ley Núm. 208-1995 (19 LPRA sec. 401 nota *et seq.*).

jurisdicciones existentes y permitir la continua expansión de las prácticas comerciales.[31]

Ahora bien, un instrumento negociable, según definido por el mencionado cuerpo normativo, es "una promesa incondicional de pagar una suma de dinero, pagaderos a la presentación o en fecha determinada, que no contiene ninguna otra promesa u orden".[32]

En cuanto a la persona con derecho a exigir el cumplimiento de un instrumento negociable, la *Ley de Transacciones Comerciales* dispone:

> "Persona con derecho a exigir el cumplimiento de un instrumento" significa (i) el tenedor del instrumento, (ii) una persona que no es tenedor pero está en posesión del instrumento y tiene los derechos de un tenedor, o (iii) una persona que no está en posesión del instrumento pero tiene derecho de exigir el cumplimiento del instrumento de acuerdo con las disposiciones de la Sección 2-309 y de la Sección 2-418(d). Una persona puede ser una persona con derecho a exigir el cumplimiento del instrumento aunque la persona no sea el dueño del instrumento o lo posea indebidamente.[33]

Sobre lo que constituye una cesión de un instrumento negociable, el Capítulo 2 de la *Ley de Transacciones Comerciales*, *supra*, establece que esta ocurre "cuando se entrega por una persona que no sea su emisor con el propósito de darle a la persona que lo recibe el derecho a exigir el cumplimiento del instrumento".[34] "Sea esta una negociación o no, confiere al cesionario cualquier derecho del cedente a exigir el cumplimiento del instrumento, incluyendo cualquier derecho que tuviese como tenedor de buena fe ...".[35]

---

[31] Sec. 1-101 de la Ley Núm. 208-1995 (19 LPRA sec. 401); *Cruz Consulting v. El Legado*, et al., 191 DPR 499, 508 (2014); *COSSEC v. González López*, 179 DPR 793, 802 (2010).
[32] Sec. 2-102 de la Ley Núm. 208-1995 (19 LPRA sec. 504(a)).
[33] Secc. 2-301 de la Ley Núm. 208-1995 (19 LPRA sec. 601).
[34] Sec. 2-203 de la Ley Núm. 208-1995 (19 LPRA sec. 553).
[35] *Id.* Véase, además, *DLJ Mortgage Capital, Inc. v. Santiago Martínez*, 202 DPR 950 (2019).

**E.**

El Art. 1118 del Código Civil establece lo siguiente:

> Artículo 1118. — Pago de buena fe al poseedor del crédito. (31 LPRA § 3168)

> El pago hecho de buena fe al que estuviere en posesión del crédito liberará al deudor.[36]

En lo aquí pertinente, el TSPR resolvió:

> [s]erán casos de aplicación del art. 1164 [del Código Civil Español, equivalente al art. 1118] y consiguiente eficacia del pago: el hecho al acreedor primitivo por un deudor que no conozca la cesión del crédito ni la incapacidad sobrevenida aquél; el que se verifique en favor de un cesionario, reconocido como tal, aunque después se declare la rescisión o nulidad de la transmisión, y el que se haga a los que, como herederos, posean la del acreedor. En estos casos, ni puede perjudicar al deudor que aquéllos a quienes pague sean luego vencidos en juicio, ni a los que en éste triunfen quedará otro medio que reclamar al que cobró indebidamente. (citas internas omitidas).[37]

Así pues, el deudor de buena fe que paga a quien aparenta ser el acreedor, queda liberado de la obligación sin perjuicio de que el verdadero acreedor pueda ejercitar una acción de enriquecimiento sin causa contra el acreedor aparente.[38]

Finalmente, conviene destacar que la validez y los efectos del pago de una obligación representada por un instrumento negociable se rige por la *Ley de Transacciones Comerciales, supra*.[39] En lo aquí pertinente, la Sección 2-602(a) de dicho cuerpo normativo establece que el pago será efectivo y extinguirá la obligación cuando lo hace la persona obligada a pagar el instrumento y se hace a la persona con derecho a exigir su cumplimiento.[40] Ello,

---

[36] Art. 1118 del Código Civil, 31 LPRA sec. 3168.
[37] *Rodríguez v. Banco Popular de Puerto Rico* 66 DPR 781, 784-85 (1946).
[38] J. Puig Brutau, Fundamentos de Derecho civil, Tomo I, Vol. II, Bosch, Barcelona, 4 ta. Ed., 1988, págs. 259-260.
[39] Art. 1125 de la Ley Núm. 55-2020 (31 LPRA sec. 9163).
[40] Sec. 2-602 de la Ley Núm. 208-1995 (19 LPRA sec. 752).

aun cuando el deudor haya hecho el pago con conocimiento de la existencia de una reclamación contra el instrumento por parte de un tercero.[41]

**F.**

En nuestro ordenamiento jurídico, la hipoteca se concibe como un derecho real, de naturaleza accesoria e indivisible y de constitución registral.[42] La garantía hipotecaria "sujeta directa e inmediatamente los bienes y derechos sobre los cuales se impone, cualquiera que sea su poseedor o titular, al cumplimiento de la obligación para cuya seguridad fue constituida".[43]

Del mismo modo, el contrato de hipoteca garantiza siempre el cumplimiento de una obligación principal.[44] En armonía con los preceptos anteriores, se ha definido la hipoteca como:

> [u]n derecho real que [...] sujeta o vincula lo hipotecado, cualquiera que sea su titular, al poder de exigir eventualmente la realización de su valor, así como la adopción de medidas dirigidas a salvaguardarlo, todo en seguridad o garantía de la efectividad de alguna obligación dineraria, y cuyo derecho es de carácter accesorio, indivisible, de construcción registral, y grava bienes inmuebles enajenables, que permanecen en posesión de su propietario o titular.[45]

Además, el gravamen hipotecario se presume válidamente constituido si está convenido en escritura pública y tal escritura pública consta inscrita en el Registro de la Propiedad.[46] "La inscripción es, pues, el acto constitutivo mediante el cual la garantía

---

[41] M.R. Garay Aubán, *Derecho Cambiario Instrumentos Negociables*, San Juan, Bibliográficas, 2009, pág. 433.
[42] *Westernbank v. Registradora*, 174 DPR 779, 784 (2008).
[43] Art. 54 de la Ley Núm. 210-2015 (30 LPRA sec. 6081).
[44] Art. 1756 del Código Civil de Puerto Rico, 31 LPRA ant. sec. 5001.
[45] L. R. Rivera Rivera, *Derecho Registral Inmobiliario Puertorriqueño*, 2da ed., Jurídica Editores 2002, pág. 481.
[46] Art. 57 de la Ley Núm. 210-2015 (30 LPRA sec. 6084).

produce efectos reales y adviene eficaz *erga omnes* al ámbito de los derechos reales".[47]

Cuando vence la obligación principal garantizada mediante hipoteca, procede la ejecución del crédito hipotecario mediante una acción civil ordinaria en cobro de dinero y ejecución de hipoteca, que no es otra cosa que la venta en pública subasta del inmueble gravado.[48]

## -III-

En síntesis, las apelantes impugnan la capacidad de PRRD para cobrar las cantidades reclamadas por varias razones. Entienden que el Loan Sale Agreement es nulo porque fue el resultado de una transacción fraudulenta, que se está impugnando ante el TPI. En consecuencia, consideran que la *Sentencia* apelada es prematura hasta que se resuelva esta controversia. Sostienen, además, que la apelada no es la legítima tenedora por endoso del pagaré debido a que la adquisición de las acreencias se hizo sin notificación a las apelantes, por lo que quedaron exoneradas de las obligaciones alegadas en la *Demanda*.

Por su parte, la apelada arguye que es la actual y legítima acreedora del crédito en controversia. Esto obedece a que los pagarés que representan la deuda fueron debidamente cedidos y endosados a su favor. A su entender, BDE no estaba impedido de ceder el préstamo a su favor. De todos modos, una restricción a la cesión sería contraria a la *Ley de Transacciones Comerciales*, *supra*, y a la ley orgánica del BDE. Además, la nulidad del contrato de cesión de crédito

---

[47] *Rosario Pérez v. Registrador*, 115 DPR 491, 493-494 (1984). Véase, además, *Crespo Rodríguez v. González González*, 208 DPR 557, 574 (2022).
[48] Regla 51.3 de Procedimiento Civil (32 LPRA Ap. V, R. 51.3).

no afecta la condición de deudoras de las apelantes. En todo caso, el pago que realice extingue la obligación para cualquier acreedor.

Luego de revisar cuidadosamente los documentos que obran en autos, determinamos que PRRD cumplió cabalmente con los requisitos de forma de la Regla 36.1 de Procedimiento Civil, *supra.* Así, pues, presentó documentos y una declaración jurada en apoyo de sus alegaciones.[49] En cambio, la apelada incumplió crasamente con sus obligaciones bajo la Regla 36.3(b)(2) de Procedimiento Civil, *supra.*[50] Esto es así, porque no citó específicamente los párrafos según enumerados en la moción de sentencia sumaria que considera que están en controversia. Menos aún, especificó la página o sección de la prueba que establece una controversia real sobre los hechos materiales pertinentes para adjudicar la reclamación. Por el contrario, su oposición consistió en una extensa argumentación de derecho sobre la nulidad del contrato de cesión de activos entre BDE y PRRD, y los documentos que acompañó con su escrito solo pretenden apoyar dicha contención jurídica. En ningún momento controvirtió los hechos y documentos presentados por la apelada.

Ante dicho escenario, corresponde determinar si el TPI aplicó correctamente el derecho y adelantamos que a nuestro entender sí lo hizo. Veamos.

Surge de los documentos que obran en autos que las partes suscribieron un contrato de préstamo[51] que

---

[49] Apéndice de las apelantes, págs. 9-75 y 103-104.
[50] *Id.*, págs. 107-195.
[51] *Id.*, págs. 9-29.

está representado por dos pagarés[52]. Que dicho contrato se enmendó[53] y la nueva obligación está reconocida por un pagaré[54]. Además, ambos pagarés se endosaron a favor de PRRD.[55] A esto hay que añadir que la obligación suscrita por las apelantes está garantizada por un bien inmueble de su propiedad.[56] Como si lo anterior fuera poco, las partes suscribieron un gravamen mobiliario sobre determinados bienes[57] y las apelantes garantizaron, solidariamente, el pago de sus obligaciones presentes y futuras mediante la suscripción de una garantía continua e ilimitada[58]. Finalmente, las apelantes incumplieron con las obligaciones contraídas y las gestiones de cobro realizadas resultaron infructuosas.[59] En consecuencia, las apelantes adeudan las cantidades reconocidas en la sentencia, que son a su vez líquidas y exigibles. Reiteramos que nada de lo anterior fue controvertido por las apelantes.

Por otro lado, el ataque a la transacción de cesión de créditos entre BDE y PRRD es inconsecuente con relación al pleito ante nuestra consideración. De un examen cuidadoso del expediente se desprende que las apelantes son parte de una obligación crediticia válida, garantizada hipotecariamente, que no han cumplido. Esta obligación es vinculante ante el poseedor del crédito, en este caso PRRD. De modo que de cumplir la misma quedarán liberadas respecto a cualquier acreedor potencial. Si posteriormente

---

[52] *Id.*, págs. 30-33.
[53] *Id.*, págs. 36-37.
[54] *Id.*, págs. 40-55.
[55] *Id.*, págs. 103-104.
[56] *Id.*, págs. 42-55 y 105-106.
[57] *Id.*, págs. 57-68.
[58] *Id.*, págs. 71-73.
[59] *Id*, págs. 74-75 y 103-104.

resulta que BDE vence en el pleito, tal evento no afectará la posición jurídica de las apelantes. Así pues, aquel tendrá que reclamar su acreencia de quien resultó vencido, es decir, PRRD.

Para terminar, somos de la opinión de que las apelantes carecen de apoyo para sustentar sus argumentos. Veamos.

En primer lugar, la ingenua invocación talismánica del Caso Núm. SJ2019CV11697, *sub judice* y paralizado porque "las partes entienden que hay buenas posibilidades de transigir el pleito", no constituye un fundamento jurídico válido para impugnar una obligación de pago firmemente anclada en nuestro ordenamiento cambiario. Por ende, mientras no prevalezca el BDE mediante sentencia firme, la apelada es la dueña del crédito reclamado y en consecuencia, tiene derecho a exigir su cobro. Como bien señaló el foro apelado, el litigio en cuestión "no equivale a detallar la evidencia admisible que sostiene la impugnación de un hecho material".[60]

En segundo lugar, ninguna sentencia del Tribunal de Apelaciones es vinculante.[61] Por el contrario, se consideran persuasivas. Menos aún, una opinión disidente de una sentencia de este tribunal, persuasiva, basada esencialmente, en otra sentencia de este mismo tribunal intermedio, igualmente persuasiva.

Finalmente, *Rodríguez v. Corte*, 53 DPR 758 (1938) es completamente distinguible del caso de autos. Ello obedece a tres poderosas razones, a saber: (1) dicha opinión es anterior a la vigencia de la *Ley del*

---

[60] *Id.*, pág. 217.
[61] Art. 4.005 de la Ley Núm. 201-2003 (4 LPRA sec. 24x).

*Registro de la Propiedad Inmobiliaria del Estado Libre Asociado de Puerto Rico*, 30 LPRA sec. 6001 *et seq.*, y de la *Ley de Transacciones Comerciales*, *supra*, que regulan la ejecución de la hipoteca de bien inmueble y la cesión y el cobro del instrumento negociable ante nuestra consideración; (2) el ordenamiento hipotecario vigente derogó el procedimiento ejecutivo sumario, en cuyo contexto se resolvió *Rodríguez v. Corte*, *supra*; y (3) entre el procedimiento sumario hipotecario, reiteramos ya derogado, y el mecanismo de la Regla 36 de Procedimiento Civil de 2009, que reguló el procedimiento mediante el cual se estableció la legitimidad de la deuda cuyo cobro se solicita, solo media una semejanza, a todas luces, superflua e insignificante: el adjetivo sumario.

**-IV-**

Por los fundamentos antes expuestos, se confirma la *Sentencia Sumaria* apelada.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

La jueza Grana Martínez disiente sin opinión escrita.

                                Lcda. Lilia M. Oquendo Solís
                        Secretaria del Tribunal de Apelaciones