ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| ROLANDO RIVAS CALZADA<br><br>Recurrido<br><br>v.<br><br>CPG REAL ESTATE; CPG ISLAND SERVICING; FULANO DE TAL; MENGANA DE CUAL; ASEGURADORA A; ASEGURADORA B; DPR DORADO OWNER, LLC.; AIG INSURANCE COMPANY-PUERTO RICO, LLC<br><br>Peticionarios | KLCE202400914 | Recurso de Certiorari procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso Núm.:<br>D DP2016-0090<br><br>Sobre:<br>Daños y Perjuicios |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Ronda Del Toro y la Jueza Díaz Rivera

**Ronda Del Toro, Juez Ponente**

# SENTENCIA

En San Juan, Puerto Rico, a 30 de septiembre de 2024.

Comparecen DBR Dorado Owner, LLC y AIG Insurance Company-Puerto Rico, LLC (parte peticionaria o DBR-AIG) y nos solicitan que revisemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala de Bayamón, el 22 de mayo de 2024, enmendada *nunc pro tunc* el 1ro de julio de 2024. Mediante el referido dictamen, el Foro recurrido declaró *No Ha Lugar* la *Moción Solicitando Sentencia Sumaria Parcial,* presentada por la parte codemandada DBR Dorado Owner, LLC y su compañía aseguradora AIG Insurance Company*.*

Expedimos el recurso y *Confirmamos* la Resolución recurrida, a la cual le agregamos ciertos hechos no controvertidos.

## I.

El 11 de febrero de 2016, Rolando Rivas Calzada (Rivas Calzada) presentó una Demanda sobre daños y perjuicios contra CPG Real Estate y CPG Island Service, LLC. Alegó, en síntesis, que el 8 de febrero de 2014, sufrió un accidente en un carrito de golf mientras ejercía labores de seguridad en el hotel Dorado Beach Ritz Carlton Reserve. Sostuvo que el guía del carrito de golf no giró, lo que ocasionó que impactara unas piedras, se viró y le ocasionó el daño por el cual reclama compensación. Indicó que los demandados CPG y/o la empresa relacionada a CPG, Fulano de Tal, son los dueños del carrito de golf que conducía. Adujo que el accidente se debió a la negligencia de CPG y/o de una empresa relacionada del grupo, quien no dio mantenimiento a los carritos de golf de los cuales son dueños.[1]

El 21 de julio de 2017, el señor Rivas le solicitó permiso al foro primario para presentar una Demanda Enmendada, con el propósito de sustituir a Fulano de Tal por DBR, ya que como parte del descubrimiento de prueba con CPGRE, CPGIS fue informado que dicha parte era el dueño de los carritos de golf.[2] Tomamos conocimiento judicial de la aludida *Moción Informativa sobre Descubrimiento de Prueba y Solicitud para Enmendar la Demanda*[3], en la cual Rivas Calzada informó como sigue:

> 2. Estando en rebeldía CPG, el 16 de mayo de 2016, el demandante diligenció una Citación a Dorado Beach para la producción de los siguientes documentos:
> […]
> > 1. Copia de toda póliza de seguro de propiedad para los carritos de golf.
> > […]
> > 4. Copia de todo documento que refleje quién es dueño de los carritos de golf.

---

[1] Apéndice págs. 37-39.
[2] Resolución de 30 de julio de 2020, Apéndice pág. 459.
[3] La moción surge del recurso KLCE201800518 presentado en este foro intermedio apelativo, el cual contenía en su apéndice, págs. 140-142, la *Moción Informativa sobre Descubrimiento de Prueba y Solicitud para Enmendar la Demanda*.

[…]

4. Mediante Resolución y Orden de 14 de febrero de 2017, notificada el 27 de febrero de 2017, este Honorable Tribunal denegó la solicitud de orden de protección por CPG, autorizándose de este modo a que el demandante obtuviera la información requerida al Dorado Beach. Pero, en un intento por ocultar la información requerida por el demandante, CPG solicitó reconsideración. […] En Resolución de 26 de mayo de 2017, este Tribunal la denegó.

5. No habiéndose recurrido de este dictamen, el 17 de julio de 2017 el demandante intentó coordinar con CPG la producción de estos documentos por el Dorado Beach. Interesantemente, fue en este momento que CPG anunció que "upon information and belief", el dueño de los carritos de golf en cuestión es DBR Dorado Owner LLC (en lo sucesivo, "DBR"). Desde cuándo CPG tiene este conocimiento; por qué CPG ha obstaculizado acceso a esta información; qué interés propietario o comercial tiene CPG en esta entidad; y por qué ha querido escudar al titular de estos carritos de golf solo lo conoce CPG.

El 29 de agosto de 2017, el Tribunal de Primera Instancia permitió la enmienda solicitada. El 20 de septiembre de 2019, Rivas Calzada solicitó permiso para enmendar nuevamente la demanda para sustituir el nombre de Mengana de Cual por Dorado Beach.

El 28 de octubre de 2019, DBR contestó la segunda demanda enmendada. Aceptó ser el dueño del carrito de golf que usaba Ribas al momento del accidente en funciones de su empleo. Alegó como defensas afirmativas que la acción estaba prescrita y que el remedio exclusivo era bajo las disposiciones de la Ley sobre Compensaciones a Obreros por Accidentes del Trabajo.[4]

Luego de otros trámites procesales, el 13 de marzo de 2024, DBR-AIG incoaron una *Moción en Solicitud de Sentencia Sumaria Parcial.* Alegaron que procedía desestimar la demanda en su contra por estar prescrita la reclamación. Indicaron que no existía controversia en cuanto a la falta de diligencia del

---

[4] Apéndice págs. 54-60, en especial, página 56, párrafo 20.

demandante Rivas Calzada en interrumpir el plazo prescriptivo contra dichas partes. Mencionaron 29 hechos como no controvertidos.[5] En especial, en el hecho 27 expusieron lo siguiente:

> 27. El demandante admitió en su deposición que no hizo gestión alguna para averiguar, antes de radicar la demanda original de 11 de febrero de 2016, quien era el dueño del carrito de golf y quien le daba mantenimiento, habiendo ocurrido el accidente el 8 de febrero del 2014, no empecé a laborar en el departamento de seguridad del hotel desde el 2012 hasta el presente (véase Exhibit 2, transcripción de deposición demandante, 1 de octubre de 2021, páginas 64-65).

El 29 de abril de 2024, Rivas Calzada presentó su *Oposición a Moción en Solicitud de Sentencia Sumaria Parcial.* Aceptó los hechos 1-4; 12-18 y 20-26 como que no presentaban controversias. Mientras que negó los hechos 5-11; 19 y 27-29. En cuanto al hecho 27 explicó lo siguiente:

> 10. El ¶27 de la *Moción en Solicitud de Sentencia Sumaria Parcial* se niega, esencialmente la referencia a la transcripción del demandante es una interpretación incorrecta de DBR, de la misma no se desprende la alegación realizada. **El demandante advino en conocimiento de los nombres de las entidades como parte del descubrimiento de prueba y por notificación a éste como parte del caso presentado.** Surge además de la Demanda que el demandante incluyó como parte a CPG, porque su conocimiento en aquel momento era que ésta era la entidad dueña de la propiedad donde ubica el Dorado Beach, a Ritz Carlton Reserve. Véase Ancio 1. Luego de un arduo descubrimiento de prueba, donde CPG ocultó la información por más de un (1) año radicando recursos incluso ante el Tribunal Supremo, es que se adviene en conocimiento que DBR es la entidad; o era en aquel momento, la entidad dueña de los carritos de golf y a su vez dicha parte mediante descubrimiento de prueba indicó que Dorado Beach Golf Management era la que le daba mantenimiento a los carritos de golf, por lo cual se procedió a sustituir la parte, según corresponde en derecho. El 3 de julio de 2020, este Tribunal determinó que la causa de acción no está prescrita respecto a DBG conforme a la teoría cognoscitiva del daño. Véase Expediente Judicial.

---

[5] Apéndice págs. 127-408.

Véase Exhibit 1, de la Solicitud de Sentencia Parcial a la Página 62 (línea 18):

**P ¿Y por qué usted demandó a CPG?**
**R. A mi entender, eran en ese entonces los dueños de los carritos de golf. En adición, eran los que les daban mantenimiento a los carritos de golf.**

Véase Exhibit l, de la Solicitud de Sentencia Sumaria Parcial a la Página 65 (línea 2):

P. ¿Cuándo usted hizo, usted personalmente, alguna gestión, si alguna, para averiguar quién era el dueño del carrito y quién era el que le daba mantenimiento?

R. Vuelvo y le repito, no hice ninguna porque ya tenía conocimiento de quienes eran.

P. ¿Y cuando usted se enteró quiénes eran?

R. Como le iba a decir anteriormente, a todos los empleados del hotel les indicaron quienes eran los inversionistas de la propiedad y quienes eran los dueños de la propiedad y más o menos cómo consistía lo que era el hotel en separación a lo que es Dorado Beach Reserve, que es otra cosa.[6] (Énfasis nuestro).

Más adelante, en el escrito agregó que, "[a]l momento de la presentación de la Demanda original no se tenía conocimiento de la identidad de la entidad dueña del carrito de golf."[7] Una vez CPG confrontó la realidad de que el demandante tendría acceso a los documentos en posesión de Dorado Beach Resort and Club, según autorizado por el TPI entonces, vino a informar al demandante que "según mejor conocimiento y creencia" el dueño de los carritos de golf es DBR Dorado Owner, LLC".[8] El demandante presentó Demanda Enmendada para incluir como parte a DBR Dorado Owner, LLC, como presunto dueño de los carritos de golf.[9]

---

[6] Apéndice pág. 416.
[7] Apéndice pág. 417.
[8] Apéndice pág. 418.
[9] Íd.

Sometido el asunto, el 22 de mayo de 2024, el foro primario dictó una *Resolución* para declarar *No Ha Lugar* la *Moción Solicitando Sentencia Sumaria Parcial.*

El 13 de junio de 2024 DBR-AIG presentaron una *Moción en Solicitud de Enmiendas y Determinaciones de Hechos Adicionales, bajo la Regla 43.1 de Procedimiento Civil y Moción en Solicitud de Reconsideración a Resolución, bajo la Regla 47 de Procedimiento Civil.* Indicó que Dorado Beach Golf Management (DBG) y Dorado Beach Owner LLC (DBR Dorado) son dos entidades distintas. DBG les brindaba mantenimiento a los carritos de golf y DBR Dorado es la dueña del hotel, sus predios y el mobiliario, incluyendo el carrito de golf.[10]

Entretanto, el 1ro de julio de 2024 el foro primario dictó *Sentencia Enmendada Nunc Pro Tunc,* a los fines de aclarar que la demandada contra la cual no procedía la desestimación prescripción lo era DBR. En esta el foro primario expuso los siguientes hechos como no controvertidos:

1. El señor Rivas comenzó a trabajar en el Hotel Dorado Beach, Ritz Carlton Reserve, el 9 de noviembre de 2012. (1)

2. Dorado Beach es una corporación de responsabilidad limitada, autorizada a hacer negocios en Puerto Rico. Sus oficinas ejecutivas se encuentran en 120 Cam 693, Barrio Sardinera, Dorado, Puerto Rico.

3. El 8 de febrero de 2014, a eso de las 5:30 p.m. el señor Rivas patrullaba en un carrito de golf Star EV, modelo STAR48-2-48, como parte de su trabajo de seguridad en Dorado Beach, Ritz Carlton Reserve y sufrió un accidente, por el que tuvo que ser hospitalizado. (4,)

4. Ocurrido el accidente, el señor Rivas fue llevado en ambulancia a la sala de emergencias del Hospital HIMA San Pablo y luego de ser estabilizado fue llevado al Hospital Industrial del Centro Médico.

---

[10] Apéndice pág. 20.

5. Debido a este accidente, el demandante estuvo fuera del trabajo por cuatro (4) meses.

6. El 5 de junio de 2015, la Corporación del Fondo del Seguro del Estado dio de alta al señor Rivas del tratamiento médico que le ofrecía.

7. DBR Dorado Owner, LLC es la entidad dueña del carrito de golf.

8. Luxury Hotel International of Puerto Rico, Inc. es una corporación registrada en el Departamento de Estado y autorizada para hacer negocios en Puerto Rico.

9. Este Tribunal, el 3 de julio de 2020, emitió una Resolución, resolviendo que el pleito no prescribió en contra de Dorado Beach; dicha resolución ya es final y firme.

Como hechos en controversia, señaló los siguientes:

1. ¿Quién fue el responsable del accidente que sufrió el señor Rivas?
2. De DBR ser responsable del accidente, ¿qué por ciento de participación debe adjudicársele y a cuánto asciende dicho porciento?
3. Del señor Rivas haber sufrido daño, ¿a cuánto asciende el daño sufrido?

Concluyó el foro primario que,

De la solicitud de sentencia sumaria, presentada por DBR, surge claramente que los hechos probados que presentó solo están relacionados a su solicitud de desestimar el pleito, por prescripción. Estos hechos ya fueron adjudicados por este tribunal, mediante resolución, el 3 de julio de 2020, por lo que nada tenemos que resolver al respecto. Pero, debemos señalar que los hechos probados que presenta DBR son para demostrar que la acción del señor Rivas prescribió; no demuestran ni remotamente que la acción del demandante prescribió. Estos hechos solo indican que el señor Rivas desconocía quién era el dueño del carrito de golf y que este no tenía por qué saber quién era el dueño o si le daba mantenimiento. En conclusión, aunque la solicitud de sentencia sumaria de DBR es realmente una solicitud de desestimación, pues ningún "hecho probado" es realmente un hecho probado, solo son especulaciones del por qué DBR entiende que el señor Rivas sabía o debía saber que esta parte codemandada podría haberle causado daño desde que tuvo el accidente, estos hechos no son necesarios para resolver la controversia, sino para determinar si el demandante conocía o debía conocer a todos los posibles causantes

del daño desde que este lo sufrió. **Pero como ya expresamos y cómo surge del expediente, no había razón para creer que el señor Rivas conocía quién era el dueño del carrito de golf hasta que dicha información le fue divulgada a raíz del descubrimiento de prueba.** (Énfasis nuestro).

Con la oposición de Rivas Calzada[11], finalmente, el 22 de julio de 2024, notificada el 23 de julio de 2024, el Tribunal de Instancia declaró *No Ha Lugar* las solicitudes de *Hechos Adicionales* y *Reconsideración*.

Insatisfecho, el 22 de agosto de 2024, DBR-AIG presentaron este Recurso en el que alegan que incidió el TPI al:

**Primero**:  Al denegar la solicitud de Sentencia Sumaria de las peticionarias DBR Dorado y AIG, no empecé a estar la reclamación incoada en contra de dichas partes, a todas luces prescrita, siendo inaplicable la teoría cognoscitiva del daño, ante la negligencia y falta de diligencia del demandante recurrido.

**Segundo**: Al denegar la solicitud de Sentencia Sumaria de las peticionarias DBR Dorado y AIG bajo la defensa de prescripción al aplicar la doctrina de la Ley del Caso.

Le concedimos término a la parte recurrida para presentar su posición al recurso y así lo hizo.  Con el beneficio de los escritos y los documentos presentados en el foro primario, evaluamos.

## II.

## A.

La sentencia sumaria es el mecanismo procesal adecuado para resolver casos en los que no es necesaria la celebración de un juicio por no existir duda sobre los hechos esenciales, contarse con toda la evidencia necesaria y solo restar la aplicación del derecho. Banco Popular de Puerto Rico v. Laureano Zorrilla Posada y otro, 2024 TSPR 62, 213 DPR ___ (2024) res. 17 de junio de 2024; 32 LPRA Ap. V, R. 36.3(e); Lugo Montalvo v. Sol Meliá

---

[11] Apéndice págs. 461-468.

Vacation, 194 DPR 209, 225 (2015); Córdova Dexter v. Sucn. Ferraiuoli, 182 DPR 541, 555-556 (2011).

Para que proceda este mecanismo es necesario que de los documentos no controvertidos surja de que no hay una controversia real y sustancial sobre los hechos del caso. Universal Ins. y otro v. ELA y otros, 211 DPR 455, 471 (2023); Ramos Pérez v. Univisión, 178 DPR 200, 214 (2010). Un hecho material es aquel que puede afectar el resultado de la reclamación de acuerdo con el derecho sustantivo aplicable. Universal Ins. y otro v. ELA y otros, supra, pág. 472; Meléndez González et al. v M. Cuebas, 193 DPR 100, 110 (2015); Ramos Pérez v. Univisión, supra, pág. 213.

La parte que se oponga a que se dicte sentencia sumaria, según la citada Regla 36.3, supra, deberá controvertir la prueba presentada por la parte que la solicita. Regla 36.3(b) de Procedimiento Civil, supra. La parte promovida no podrá descansar solamente en las aseveraciones o negaciones contenidas en sus alegaciones, sino que deberá contestar en forma detallada y específica, como lo hiciera la parte solicitante. Bobé et al. v. UBS Financial Services, 198 DPR 6, 21 (2017); 32 LPRA Ap. V, R. 36.3(e).

Al dictar sentencia sumaria el tribunal deberá analizar los documentos que acompañan la solicitud de sentencia sumaria y los documentos incluidos con la moción en oposición, así como aquellos que obren en el expediente del tribunal. S.L.G. Szendrey-Ramos v. Consejo Titulares, 184 DPR 133, 167 (2011).

Así pues, se dictará sentencia sumaria cuando "las alegaciones, deposiciones, contestaciones a interrogatorios y admisiones ofrecidas, en unión a las declaraciones juradas, si las hay, u otra evidencia demuestran que no hay controversia real

sustancial en cuanto a algún hecho esencial y pertinente". 32 LPRA Ap. V, R. 36.3(e); Rosado Reyes v. Global Healthcare, 205 DPR 796, 808 (2020); Pérez Vargas v. Office Depot, 203 DPR 687, 699 (2019).  La sentencia sumaria puede dictarse a favor o en contra del promovente, según proceda en derecho. Rosado Reyes v. Global Healthcare, *supra*; Audiovisual Lang. v. Sist. Est. Natal Hnos., 144 DPR 563, 575 (1997).

Ahora bien, se ha pautado que el foro apelativo intermedio se encuentra en la misma posición que el Tribunal de Primera Instancia al momento de revisar solicitudes de sentencia sumaria. Banco Popular de Puerto Rico v. Laureano Zorrilla Posada y otro, *supra*; Meléndez González et al. v. M. Cuebas, 193 DPR 100, 118 (2015); Vera v. Dr. Bravo, 161 DPR 308, 334 (2004).  Entiéndase, le corresponde realizar una evaluación *de novo*. Banco Popular de Puerto Rico v. Laureano Zorrilla Posada y otro, *supra*; Meléndez González et al. v. M. Cuebas, supra, pág. 116.  De manera que, como parte de nuestra función revisora, debemos evaluar todos los documentos que obren en el expediente de modo que, previo a determinar la procedencia de una solicitud de sentencia sumaria, realicemos un "balance adecuado entre el derecho de todo litigante a tener su día en corte y la disposición justa, rápida y económica de los litigios civiles". Banco Popular de Puerto Rico v. Laureano Zorrilla Posada y otro, *supra*, citando a Rosado Reyes v. Global Healthcare, *supra,* pág. 808.

**B.**

El Artículo 1802 del derogado Código Civil de 1930, vigente al momento de los hechos que suscitan esta reclamación,[12]

---

[12] Derogado por el Código Civil de 2020.  No obstante, nos referimos al Código Civil de 1930 que era el vigente a la fecha de los hechos que originaron la presente causa.

indicaba que, "el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado." 31 LPRA sec. 5141.

El Artículo 1861 del Código Civil, establecía que, "[l]as acciones prescriben por el mero lapso del tiempo fijado por la ley". 31 LPRA sec. 5291. Ahora bien, el término para ejercer las acciones se puede interrumpir de tres maneras, a saber, por "su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor". Artículo 1873 del Código Civil, 31 LPRA sec. 5303.

El Artículo 1868 del Código Civil, establecía que prescriben por el término de un (1) año las acciones para exigir la responsabilidad civil por las obligaciones derivadas de la culpa o negligencia de que se trata en el Artículo 1802, desde que lo supo el agraviado. 31 LPRA sec. 5298. Como norma general, el término prescriptivo de un año comienza a transcurrir desde que el agraviado tuvo, o debió tener, conocimiento del daño que sufrió y estuvo en posición de ejercer su causa de acción. Art. 1869 del Código Civil, 31 LPRA sec. 5299; Rivera Ruiz v. Mun. De Ponce et al., 196 DPR 410, 416 (2016); Véase, además, Maldonado Rivera v. Suárez y otros, 195 DPR 182, 194 (2016). En este punto, conforme la teoría cognoscitiva del daño, se ha reiterado que este término comienza a transcurrir una vez el perjudicado conoció o debió conocer que sufrió un daño, quién se lo causó, así como los elementos necesarios para ejercitar efectivamente su causa de acción. Maldonado Rivera v. Suárez y otros, *supra*; Toro Rivera et als. v. ELA et al., 194 DPR 393, 416 (2015).

Ahora bien, si mediante el descubrimiento de prueba u otro medio el agraviado adviene en conocimiento de la existencia de otro coautor y del resto de los elementos necesarios para

reclamarle, el término prescriptivo contra ese alegado cocausante comenzará a transcurrir en ese momento. Fraguada Bonilla v. Hosp. Aux. Mutuo, 186 DPR 365, 390 (2012). Ello, pues un estatuto de prescripción cuyo efecto sea exigirle a la parte demandante que presente una causa acción antes de tener conocimiento de la existencia de ésta, viola el debido proceso de ley. Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*; COSSEC et al. v. González López et al., 179 DPR 793, 805-806 (2010); Vera v. Dr. Bravo, *supra*, pág. 327.

El momento en que se conoce o debió conocerse el daño es materia de prueba e interpretación judicial, debido a la multiplicidad de circunstancias que inciden en el conocimiento del daño. Toro Rivera et als. v. ELA et al., *supra*. Si bien parecería un asunto simple, el análisis sobre dicho término y sus efectos jurídicos requiere ponderar, entre otros elementos, la naturaleza o tipo de daños en relación con los hechos en cuestión. Toro Rivera et als. v. ELA et al., *supra*. Pero, "si el desconocimiento se debe a falta de diligencia, entonces no son aplicables estas consideraciones sobre la prescripción". Fraguada Bonilla v. Hosp. Aux. Mutuo, *supra*, pág. 374; COSSEC et al. v. González López et al., *supra*.

## C.

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. McNeil Healthcare v. Mun. Las Piedras I, 206 DPR 391 (2021); 800 Ponce de León v. AIG, 205 DPR 163 (2020); IG Builders et al. v. BBVAPR, 185 DPR 307 (2012); Pueblo v. Díaz de León, 176 DPR 913, 917 (2009); García v. Padró, 165 DPR 324, 334 (2005). La característica distintiva de este recurso se asienta en la discreción

encomendada al tribunal revisor para autorizar su expedición y adjudicar sus méritos. IG Builders et al. v. BBVAPR, *supra*. Dicha discreción es "una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera". 800 Ponce de León v. AIG, *supra,* Citibank et al. v. ACBI et al., 200 DPR 724, 735 (2018); Medina Nazario v. McNeil Healthcare LLc, 194 DPR 723, 729 (2016); IG Builders v. BBVAPR, *supra*, pág. 338.

A esos efectos, la Regla 52.1 de Procedimiento Civil de Puerto Rico, establece los preceptos que regulan la expedición del recurso discrecional de *certiorari*, por parte del Tribunal de Apelaciones, para la revisión de determinaciones interlocutorias del Tribunal de Primera Instancia. En lo pertinente, la regla dispone que y citamos:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión. Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.
>
> 32 LPRA Ap. V, R. 52.1

Expuesto el marco jurídico que delimita la controversia que atendemos, resolvemos de conformidad.

**III.**

El peticionario alega que el demandante Rivas Calzada perdió su derecho a reclamarle a DBR Dorado y a su aseguradora, ya que el desconocimiento del hecho de que DBR Dorado era la dueña del carrito de golf, se debió a su propia negligencia y falta de diligencia. Adujo que la identidad de DBR Dorado, como dueño del hotel, siempre estuvo frente a la vista del demandante. Ello porque el demandante recibía su talonario de pago de donde surgía Luxury Hotels International of Puerto Rico, Inc., como operador de DBR Dorado y haciendo negocios como Dorado Beach a Ritz Carlton Reserve. Agregó que, el demandante, como empleado del hotel que laboraba en la misma área donde se encontraba el taller de mantenimiento de los carritos de golf, pudo haber indagado el nombre de la entidad dueña de estos, pero no lo hizo. Adujo que tampoco interrumpió extrajudicialmente el término para demandar. Por todo ello, indicó que resulta inaplicable la teoría cognoscitiva del daño.

Rivas Calzada, por su parte, nos explicó que el hotel Dorado Beach funciona a través de más de treinta (30) corporaciones. Indicó que en el descubrimiento de pruebas fue que advino en conocimiento de la entidad dueña del carito de golf. Expuso que los representantes de CPG señalaron quien era la compañía dueña del carrito de golf y en ese momento se procedió a traer a DBR como parte demandada. Ante ello, expresó que no procede la solicitud de DBR, pues supo de esa entidad mediante el descubrimiento de prueba del caso, sustituyendo a la parte, según acogido por el Tribunal de Primera Instancia. Agregó que fue

diligente y siempre se le indicó que el dueño de las operaciones de Dorado Beach lo era CPG.

Revisamos.

De los hechos que informa esta causa surge que el accidente con el carrito de golf objeto de esta reclamación ocurrió el 8 de febrero de 2014 en los predios del hotel Dorado Beach donde labora el demandante Rivas Calzada. Luego de haber enviado cartas de reclamación extrajudicial, el 11 de febrero de 2016 el señor Rivas Calzada interpuso la demanda contra CPG Real Estate y CPG Island Servicing (CPG). El señor Rivas Calzada demandó a CPG porque entendía, en ese entonces, que CPG era el dueño del carrito de golf y quien le daba mantenimiento.[13] Indicó que no realizó más gestiones para averiguar quién era el dueño porque ya tenía conocimiento de que el dueño era CPG.[14] Ante esta creencia, resulta adecuado y razonable que Rivas Calzada incluyera únicamente a CPG como demandado conocido.

---

[13] Apéndice pág. 211, Transcripción de deposición de 1 de octubre de 2021, pág. 62, líneas 18-22.

[14] De la transcripción de la deposición de 1 de octubre de 2021, págs. 64-66 surge lo siguiente:

P. ¿Qué gestiones hizo usted para averiguar, antes de radicar la demanda, quién era el dueño del carrito y quien le daba mantenimiento?
R. Ninguna.
P. ¿No hizo ninguna gestión?
R. No.
P. ¿Cuándo usted hizo, usted personalmente, alguna gestión, si alguna, para averiguar quién era el dueño del carrito y quién era el que le daba mantenimiento?
R. Vuelvo y le repito, no hice ninguna porque ya tenía conocimiento de quienes eran.
P. ¿Y cuando usted se enteró quiénes eran?
R. Como le iba a decir anteriormente, a todos los empleados del hotel les indicaron quienes eran los inversionistas de la propiedad y quienes eran los dueños de la propiedad y más o menos cómo consistía lo que era el hotel en separación a lo que es Dorado Beach Reserve, que es otra cosa.
P. O sea, desde que usted empezó a trabajar allí usted sabía que había un dueño de la propiedad?
R. Es correcto.
P. ¿Qué era quién?
R. Caribbean Property Group.
    […]
P. ¿Y quién era el dueño de los carritos de golf?
R. Las mismas compañías de ellos.
P. ¿Pero usted sabe o no sabía?
R. Vuelvo y le repito. Las mismas compañías de ellos. En ese momento no sabía cómo se llamaba la compañía.

En cuanto al momento en que Rivas Calzada se enteró de que DBR era el dueño del carrito de golf, surge de la Resolución emitida el 3 de julio de 2020, que fue en el descubrimiento de prueba con CPGRE, CPGIS que el demandante fue informado que dicha parte era el dueño de los carritos de golf.[15]

A su vez, en la *Oposición a la Moción de Sentencia Sumaria,* Rivas Calzada explicó que luego de presentada la demanda, en el proceso de la producción de documentos, se le informó que, "según mejor conocimiento y creencia" el dueño de los carritos de golf es DBR Dorado Owner, LLC".[16]  En la deposición que se le tomó a Rivas Calzada el 1ro de octubre de 2021, este declaró que fue a través de su licenciada que se enteró que el dueño del carrito era DBR Dorado Beach Owner.[17]

Esta información la corroboramos con la *Moción Informativa sobre Descubrimiento de Prueba y Solicitud para Enmendar la Demanda*.  En esta el demandante expresó que el 16 de mayo de 2016, diligenció una citación a CPG para la producción de los documentos relacionados la titularidad del carrito de golf, entre otros.  Luego de un extenso trámite judicial, Rivas Calzada indicó que en julio de 2017 fue notificado de que el dueño del carrito era DBR Dorado Owner.[18]  Por tanto, vemos que el demandante solicitó diligentemente los documentos que reflejaran quién era el dueño del carrito de golf.  Es en ese trámite de descubrimiento de pruebas que adviene en conocimiento que el dueño del carrito de golf es DBR Dorado.  A tan solo días de recibir tal información, el 21 de julio de 2017, Rivas Calzada le solicitó autorización al

---

[15] Resolución de 30 de julio de 2020, Apéndice pág. 459.
[16] Apéndice pág. 418.
[17] Apéndice pág. 215, Deposición Pág. 66, líneas 3-5.
[18] Ver *Moción Informativa sobre Descubrimiento de Prueba y Solicitud para Enmendar la Demanda*.

tribunal para enmendar la demanda e incluir a DBR Dorado Owner.[19]

En esta línea, resulta adecuada la siguiente expresión del foro primario: "cómo surge del expediente, no había razón para creer que el señor Rivas conocía quién era el dueño del carrito de golf hasta que dicha información le fue divulgada a raíz del descubrimiento de prueba."[20]

Por lo que, según la teoría cognoscitiva del daño, es desde julio de 2017 que Rivas Calzada estuvo en posición de ejercer su causa de acción contra el dueño del carrito de golf. De ahí, comenzó a transcurrir el término prescriptivo de un (1) año para incluirlos como demandados. Este evento ocurrió el 21 de julio de 2017 cuando Rivas Calzada le solicitó al tribunal enmendar la demanda y luego el Tribunal aceptó la enmienda. Por tanto, la acción se interpuso a tiempo y no estaba prescrita.

De otro lado, resaltamos que el hecho de que el señor Rivas Calzada era empleado del hotel y recibía su pago de nómina a nombre de ciertas compañías o entidades, no significa que este sabía o debía saber que una de esas era la dueña del carrito de golf. La titularidad del carrito de golf y la eventual responsabilidad por el accidente, son eventos independientes a los pagos que recibía el señor Rivas Calzada en su trabajo.

En suma, resulta correcta y adecuada la decisión del foro primario de denegar la *Solicitud de Sentencia Sumaria Parcial* que interpuso DBR Dorado Owner y su aseguradora AIG, en la cual alegaron que la acción incoada en su contra estaba prescrita. En el análisis, el TPI emitió la *Resolución* con los hechos esenciales y

---

[19] Íd.
[20] Apéndice pág. 17.

pertinentes sobre los cuales no existía controversia sustancial y los que estaban controvertidos.

A la *Resolución* aquí recurrida, solo le resta agregar como hechos no controvertidos los siguientes:

1. Como resultado del descubrimiento de pruebas, Rivas Calzada se enteró que DBR Dorado Owner era el dueño del carrito de golf.

2. El 21 de julio de 2017, Rivas Calzada solicitó enmendar la demanda para incluir DBR Dorado Owner como dueño del carrito de golf.

3. Esta acción se presentó dentro del año de haber conocido que DBR Dorado Owner era el dueño del carrito de golf.

Por último, en el segundo señalamiento de error, DBR-AIG alega que el foro primario incidió al aplicar la "ley del caso" al dictaminar que desde el 3 de julio de 2020 había emitido una Resolución resolviendo que el pleito no prescribió.

Sobre este punto, solo aclaramos que en la *Resolución* de 3 de julio de 2020 el foro primario denegó la solicitud de *Desestimación por Prescripción* presentada por Dorado Beach Golf Management, LLC. (DBG).[21] Dorado Beach Golf Management y DBR Dorado Owner, son entidades distintas. Aun así, en la Resolución que aquí revisamos el foro primario mencionó la Resolución de 3 de julio de 2020, de todas formas, atendió y resolvió la solicitud de *Sentencia Sumaria* en cuanto a la prescripción de la acción contra **DBR Dorado Owner.** Esa decisión es la que aquí confirmamos, según aquí explicamos.

**IV.**

Por las razones antes expresadas, que hacemos formar parte de esta sentencia, *Confirmamos* la *Resolución recurrida* mediante la cual el foro primario denegó la Solicitud de Sentencia Sumaria Parcial incoada por DBR Dorado Owner y su aseguradora

---

[21] Apéndice págs. 444-460.

AIG.    Solo añadimos los tres (3) hechos que no están en controversia.    Consecuentemente, se devuelve el asunto al foro primario para la continuación de los procedimientos, con los hechos aquí mencionados.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones